UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERNESTO GALARZA | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:01CV986 (AWT) |
| VS. | : | |
| | : | |
| LOMBARD FORD and | : | |
| ROBERT LOMBARD | : | |
| Defendants. | : | FEBRUARY 24, 2004 |

**LOCAL RULE 56(a)(1) STATEMENT IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to D. Conn. L. Civ. 56(a)(1), the Defendants, Lombard Ford, Inc.

("Lombard Ford") and Robert Lombard, hereby submit the foregoing statement of

material facts as to which there is no genuine issue to be tried.  All exhibit references

are to exhibits attached to the Defendants' Memorandum of Law In Support of Summary

Judgment.

1.    On March 15, 1982, Robert Lombard, as President, and his wife Patricia,

as Secretary, founded Lombard Ford, which is located in Winsted, Connecticut and

successfully operated the dealership for approximately twenty-two (22) years.  See

Deposition Transcript of Robert Lombard, dated April 18, 2003, p. 5, **Exhibit A**.

Lombard Ford has received the Distinguished Achievement Award from Ford Motor

Company for its sales and service for fifteen (15) of its (22) twenty-two years in

business.  **Exhibit A**, p. 12.

2.    The Lombard's dealership has achieved one of the highest customer

satisfaction ratings among Ford dealerships, resulting in the Chairman's Award in 1996,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

and consistent high ratings in customer satisfaction in 1997 and 1998. <u>See</u> QCP

Quarterly Reports in 1996 and 1997, **Exhibits B and C**; and Ford Customer Loyalty

Report for 1998, **Exhibit D**. As result of dealership's ongoing ethic to sales and service,

upon which it won the aforementioned Distinguished Achievement Award for 15

consecutive years in business, Lombard Ford won the President's Award from Ford

Motor Company in 1999. Lombard Ford again won the President's Award in 2002.

**Exhibit A**, p. 15. The Lombards attribute their success to their strong work ethic,

working regularly six and seven days a week at the dealership, and their efforts to

promote an honest and friendly dealership through training, close supervision, and

overall appreciation of their sales force. In addition, the Lombards formerly operated a

successful boat dealership in Winsted under the name Offshore Speed and Ski, LLC.

**Exhibit A**, p. 7.

      3.     In early 1999, the Lombards decided to hire a General Manager to run

Lombard Ford, in order to relieve them of some of their responsibilities at the

dealership, and to allow them more time to make their boat dealership a success.

**Exhibit A,** p. 9. Mr. and Mrs. Lombard sought an individual who would be with the

dealership long-term, to oversee the operations of the dealership and run it in a

profitable manner, who could operate the dealership with little or no supervision. <u>Id.</u>

The Lombards sought an individual who shared the same energy level and work ethic

as they have, as well as the experience necessary for the position. <u>Id.</u>

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

4.      On February 19, 1999, Mr. Joe Holstein, a recruiter of Automotive Career Consultants of New England, informed Mr. and Mrs. Lombard of three (3) potential candidates for the General Manager position.  See Facsimile transmittal to Robert Lombard from Joe Holstein, dated February 19, 1999, **Exhibit E**.  One of the candidates was the Plaintiff, Ernesto Galarza, from New Jersey.  Id.  Mr. Holstein provided Lombard Ford with the Plaintiff's resume and noted the Plaintiff's intention to move from New Jersey since  "[t]he town [the Plaintiff] lives in show[s] signs of contamination (Time Magazine) so he wants to take his children where they can grow up without the treat of toxins in the air."  **Exhibit E**.  Mr. and Mrs. Lombard decided to interview the Complainant.  **Exhibit A**, pp. 27-28.

5.      Mr. and Mrs. Lombard both interviewed the Plaintiff. **Exhibit A**, p. 27. When Mr. Lombard questioned the Plaintiff the reasons why he wanted to leave New Jersey, the Plaintiff 's wife indicated she wanted to move to the country and didn't want to live in New Jersey any longer.  **Exhibit A**, p. 31.   Specifically, the Plaintiff mentioned that he feared for his family's health because of a major environmental problem in Tom's River, where the Plaintiff lived. **Exhibit E.**

6.      The Lombards informed the Plaintiff that their business was very different from where he was working.  **Exhibit A**, pp. 33-35.  The Lombards explained to the Plaintiff that while he had to be a strong leader, he would have to do it in a gentler way than what he was used to, since the applicant pool was much smaller in Winsted, and they did not have the ability to easily replace employees.  **Exhibit P**, pp. 148-49.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

7.     Although the Plaintiff's resume indicated he did not have experience running a dealership, and did not have much knowledge about parts and service, the Plaintiff told the Lombards that he was ready and able to put in the hours necessary to learn. **Exhibit E.** The Plaintiff's resume indicates that he did not possess any prior experience as a General Manager, but only had Sales Manager experience. Id. The Plaintiff told the Lombards that he worked long hours at his present job, sometimes working late into the evenings. **Exhibit P**, p. 113.

8.     In discussing the sales and volume expectations of the dealership, the Lombards informed the Plaintiff that the dealership was working toward a goal of selling 100 vehicles per month, but that they were most concerned with the profitability of the sales rather than volume. **Exhibit A**, pp. 34-36. For example, they told the Plaintiff that 80 profitable sales per month was better than 100 non-profitable sales. Id., pp. 34-35.

9.     In general discussion prior to his hiring, the Plaintiff openly discussed his nationality with Mr. Lombard. **Exhibit A**, pp. 31-34. Because the Plaintiff's name ended in "a," Mr. Lombard asked the Plaintiff whether he was Italian. Id., p. 32. The Plaintiff told Mr. Lombard that he was Spanish. Id. Mr. Lombard said that Spanish is close to Italian - - that "it's all Mediterranean blood" - - to which the Plaintiff joked about it. Id. Mr. Lombard continued to explain that he understood some Italian because his parents spoke the language, that he took Spanish in school, and that both languages were very similar. Id., pp. 32-33.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

10.    On March 16, 1999, the Plaintiff submitted to Mr. and Mrs. Lombard a "business plan/compensation proposal," which contained his "game plan" for improving the dealership's business, as well as his compensation requirements. See Letter to Rob and Patty Lombard from Ernie Galarza, dated March 16, 1999, **Exhibit F**.   The Plaintiff's business plan included plans for improving advertising efforts through maintaining demographic information of, and mailing out fliers to, their customers; properly training salespersons; implementing monthly sales goals; conducting monthly reviews of salespersons; create a busy, "buying" atmosphere in the dealership; setting up a simple internet website for the dealership; and provide monthly reports to Mr. and Mrs. Lombard as to what is and is not selling.  See Id.   Notably, the Plaintiff recognized:

> I am aware that I do not have the "full fleged" credentials that a true GM has.  However, the statement I can learn. Service and parts can be lared. What I lack initially in the "back end" of the business I will make up in my exceptional strength in the "front."  The new business and the new deals we close will be worth every penny paid to me.

Id.  Among the Plaintiff's compensation plan requests was a $90,000 guaranteed annual salary with no commission in the first year, and a "one-year employment contract."  Id.

11.    Although Mr. and Mrs. Lombard had interviewed other applicants for the General Manager position, the Plaintiff's representations to them concerning his ability to work hard and long hours convinced the Lombards that the Plaintiff was the most qualified for the job.  **Exhibit A**, p. 28; **Exhibit E**.

12.    After informing the Plaintiff that they were interested in hiring him as General Manager, the Lombards discussed with the Plaintiff the terms of his

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

employment.   In response to the Plaintiff's request for an employment contract, the

Lombards informed the Plaintiff that no exception would be made to their policy that all

employment is at-will, as outlined in their employment manual. See Lombard Ford, Inc.,

Employee Handbook, p. 1, **Exhibit G**; **Exhibit A**, pp. 48-49.  Moreover, the Plaintiff has

admitted that he understood the terms of an at-will employment and was aware that

there was no contract for employment with Lombard Ford.  **Exhibit P**, pp. 47-50.

13.    The salary of $90,000 was well beyond what the Lombards had

anticipated paying the Plaintiff, since they traditionally paid their sales managers a much

smaller salary plus commissions.  **Exhibit A**, pp. 37-39.  The Plaintiff, however, told the

Lombards that in exchange for his requested salary, he would work six days a week,

whatever hours it took, with no time off in his first year, except for time off needed for

matters relating to his move, and focus 100% on the dealership.  Based on these

representations, the Lombards decided to take the risk and offered to pay the Plaintiff a

salary of $88,000 for the first year, plus reimbursement of his moving expenses and

living expenses for the first three months.  **Exhibit A**, pp. 47-48.  Mr. Lombard told the

Plaintiff that he would receive a bonus plan in January for the year 2000, based on a

percentage of net profits of the dealership less any used vehicle depreciation.  The

Lombards told the Plaintiff that after the first year, his compensation structure would

change to a much smaller salary plus a commission based on the profits of the

dealership.  **Exhibit A**, pp. 37-40.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**Halloran**
& **Sage** LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

14.    Mr. Lombard had briefly mentioned to the Plaintiff that, if he turned out to be the right person for the General Manager position, there could be the possibility of some type of stock appreciation program, and that when it came time for him and Mrs. Lombard to sell an ownership percentage of the dealership, that he may be offered an option to buy in. **Exhibit A**, pp. 40-41. Mr. Lombard told the Plaintiff that he had to prove himself for an extended period of time before he would entertain any such deal. Moreover, Mr. Lombard never mentioned any ownership in the dealership.  Id.

15.    The Plaintiff began working for Lombard Ford in early April 1999. See New Hire Information, Ernie Galarza, dated April 1, 1999, **Exhibit H**.  The Plaintiff's first year as General Manager was unsuccessful in many respects.  The Plaintiff did not honor any of the assurances he made to the Lombards, including his representation that he would work long hours and not to take time-off.  The Plaintiff's incompetence in managing Lombard Ford's business resulted in a significant decrease in customer satisfaction, more than 100% employee turnover, and a significant decrease in profits. **Exhibits C, I, J, K and L.**

16.    Following the Plaintiff's employment as General Manager, Lombard Ford's owner loyalty significantly decreased from 42% to 27% during the Plaintiff's employment.  See 1999 Ford Customer Loyalty Report, dated September 15, 2000, **Exhibit I**; *compare* 1998 Ford Customer Loyalty Report, **Exhibit C**.  In fact, the Lombards had later learned from its employees that the Plaintiff had been rude and obnoxious with customers. **Exhibit N**, Interrogatory No. 3, p. 2.

- 7 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

17.    The Plaintiff was verbally abusive to employees. **Exhibit N**, Interrogatory No. 3, p. 2.  Specifically, the Plaintiff yelled at and degraded salespersons in front of customers.  **Exhibit A**, pp. 79-80.  The Plaintiff's conduct toward employees resulted in the highest employee turnover in all the years Lombard Ford has been in business. **Exhibit A**, pp. 77-87.

18.    On average, Lombard Ford maintained approximately 42 employees in the years prior to the Plaintiff's employment.  During the Plaintiff's one (1) year employment with Lombard Ford as General Manager, the Plaintiff terminated four employees, and over fifty (50) other employees quit. See Termination/Quits, Sales Department – April 1999 through April 2000; Termination/Quits Other Departments, April 1999 through April 2000, **Exhibit J**; **Exhibit A**, pp. 73-75, 108-109.

19.    The employee terminations during the Plaintiff's employment as General Manager far outweighed employee terminations in any of the prior years. See Table of Voluntary and Involuntary Terminations of Employment, 1997, attached hereto as **Exhibit K**; **Exhibit A**, pp. 75.

20.    Many if not all of these employees personally complained to the Lombards about the Plaintiff's abusiveness towards them.  **Exhibit A**, pp. 79-80; **Exhibit N**, Int. # 3, p. 2.  The Lombards discussed with the Plaintiff their concern with the employee turnover.  Despite attempts to correct the problems, the employee turnover went unabated.  Further, the Plaintiff was dishonest with the Lombards about the reasons for employee departures.  For example, Sales Managers, Drake Viscone, made his opinion

- 8 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

well known that did not like the Plaintiff. **Exhibit A**, pp. 87-90. In early 2000, the Plaintiff told Mr. Lombard that Mr. Viscone had quit because he was unhappy with Mr. Lombard. Id. It was not until after the Plaintiff was terminated that Mr. Lombard found out that the Plaintiff had fired Mr. Viscone. Id.

21.    The profitability of the dealership also suffered tremendously during the Plaintiff's one-year employment.  In 1999, although sales volume increased, the dealership lost approximately $108,000.00 more in profits than in the prior year.  See 1998 versus 1999 Profit Comparison, **Exhibit L**; **Exhibit A**, pp. 118-120.  The Lombards observed that despite their discussions with the Plaintiff he appeared to be solely focused on increasing sales volume rather than on profitability of sales. Id.

22.    Adding to the decrease in profitability of the dealership was the Plaintiff's excessive and unwise spending of the dealership's money. In fact, the dealership's expenses skyrocketed, doubling the amount spent in the previous year. See Expense Comparison - January 1998 through October 2000, **Exhibit M; Exhibit A**, pp. 128-141. For example, the Plaintiff never attempted to obtain a good rate on advertising costs. **Exhibit A**, pp. 130-33.  Moreover, the profit per vehicle decreased during the Plaintiff's employment as General Manager. **Exhibit A**, p. 128.

23.    By January 2000, the dealership had been in the red for almost a year, and Mr. Lombard had considered terminating the Plaintiff.  Notwithstanding the Plaintiff's poor performance, Mr. Lombard decided to continue the Plaintiff's employment least until the end of his first year in April. **Exhibit N**, Int. No. 3, p. 2.  Given

- 9 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the financial condition of the dealership, however, Mr. Lombard could not establish a bonus the Plaintiff.  In fact, as the year progressed, the Plaintiff would not have earned a bonus under any plan based on net profits. See **Exhibit L**.

24.    The Plaintiff also failed to adequately hire, train and supervise his employees.  The Plaintiff would fail to carefully review applications for employment or check references.  For example, the Plaintiff hired a salesperson who had just had a DWI, which was clearly indicated on his employment application.  See Defendants' Responses to Plaintiff's Interrogatories, dated November 29, 2002 and October 7, 2003, **Exhibit N**. Mr. Lombard called the Plaintiff to his office and asked him if he had read the employment application or checked the individual's references.  The Plaintiff responded in the negative.  **Exhibit A**, pp. 72-74.  Mr. Lombard told the Plaintiff that this individual could not have the job, and that he could not hire another person without an interview by Mr. Lombard. Id. The very next day, however, the Plaintiff attempted to hire another employee without Mr. Lombard's approval. Id.

25.    The Plaintiff also failed to train new salespersons before putting them onto the sales floor.  Id., pp. 34-35; **Exhibit P**, p. 94; **Exhibit N**, Int. # 3, p. 2.   Mr. Lombard continually told the Plaintiff that he could not put anyone out on the sales floor without full training.  Mr. Lombard discussed with the Plaintiff several times the ways in which the employees needed to be trained.  Mr. Lombard would still, however, found new, untrained salespersons on the sales floor, and he would have to take them aside and train them himself.  Although the Lombards had hired the Plaintiff in order to relieve

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

them of the supervisory responsibilities at the dealership, the Plaintiff's failures at hiring and training employees resulted in Mr. and Mrs. Lombard having to assume these responsibilities on many occasions.

26.    The Plaintiff's promises to the Lombards that he would not take any time off in his first year also went unfulfilled. **Exhibit P**, p. 113.   The Plaintiff took over five (5) weeks off in his first year. See Daily Attendance Records, Ernie Galarza 1999-2000, **Exhibit O**.  During the Plaintiff's one year employment with Lombard Ford, he did not fulfill his representations of his energy level and ability to work long hours. **Exhibit E.** Moreover, the Plaintiff often complained to the Lombards about being tired and needing time off.  The Lombards reluctantly allowed the Plaintiff to take the requested time off, despite the Plaintiff's initial promises not to take time off in the first year. **Exhibit P**, pp. 113-15.

27.    The Plaintiff also displayed conduct that led the Lombards not to trust him. For example, the Plaintiff once promised a customer that the dealership would deliver a vehicle to England, and did not properly document the delivery at the time the vehicle was picked up for transportation. See Deposition Transcript of Ernesto Galarza, pp. 71-73, **Exhibit P**.  On  another occasion, the Plaintiff had sent vehicles off the lot with incorrect temporary plates. **Exhibit P**, p. 69.   Both instances resulted in customer complaints and compromised the dealership's compliance with Connecticut Motor Vehicle laws.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

28.     Moreover, during the last several months of his employment, the Plaintiff spent many days in his office on his computer when the work to be done on the computer did not warrant such an amount of time.  The Plaintiff would immediately clear his computer screen when Mr. or Mrs. Lombard entered his office. **Exhibit P,** p. 165. Thereafter, the Plaintiff rearranged his desk in his office so that no one could see what the Plaintiff was doing on his computer.  After the Plaintiff's employment was terminated, the Lombards discovered that the Plaintiff had been frequently visiting pornographic sites on the internet during business hours. See Defendants' Dislcosure of Expert Witness dated June 14, 2002, **Exhibit Q**.

29.     Despite Mr. and Mrs. Lombard's counseling the Plaintiff on a daily basis to try to get him to perform his job well, the Plaintiff took none of the counseling seriously. Due to the Plaintiff's incompetence and untrustworthiness, in addition to his taking significant time off, the Lombards could not entrust the Plaintiff with operating the dealership, resulting in the Lombards having to perform many of the Plaintiff's responsibilities.  The Lombards decided in April 2000 that they would eliminate the Plaintiff's position.  **Exhibit N**, Int. # 3 and 4, pp. 2-3.

30.     Upon the Plaintiff's return from a week's vacation in early May 2000, Mr. Lombard informed the Plaintiff that he was being laid off.  This was done in the presence of two management personnel.  When the Plaintiff asked Mr. Lombard for an explanation, Mr. Lombard informed the Plaintiff that his position was being eliminated. Given the Lombard's suspicions about the Plaintiff's activity on his office computer

- 12 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(which was owned by the Lombard's business), the Plaintiff was not allowed to re-enter his office.  **Exhibit P**, p. 136.

31.     In light of the Plaintiff's job performance, the Lombards did not respond to the Plaintiff's request for a letter of recommendation.   After the Plaintiff's employment ended, the Lombards found out that the Plaintiff had lied to a potential employer about his accomplishments at Lombard Ford.  Specifically, a potential employer e-mailed Mr. Lombard, asking him to confirm the Plaintiff's assertions that he had voluntarily resigned from Lombard Ford, increased sales volume by 65%, increased per unit gross by $350, increased PRU's by $325, and increased the customer satisfaction index (V.O.C.) by 22%.  See e-mail to Mr. Lombard, dated May 11, 2000, **Exhibit R**.  Lombard Ford's records show that none of the Plaintiff's statements are true. (See **Exhibits B, C, D, I, L and M**.)

32.     There is no longer a General Manager position at Lombard Ford, and the Lombards have not otherwise replaced the Plaintiff.  See Current Employee List, attached hereto as **Exhibit S; Exhibit A**, p. 20.

33.     On September 20, 2000, the Plaintiff filed a Complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO").  See Affidavit of Illegal Discriminatory Conduct, dated September 20, 2000 **Exhibit T**.  The Plaintiff claimed that his termination from Lombard Ford constituted discrimination, harassment, and retaliation based on his race (Hispanic), national origin, color, age, alienage, ancestry, and for having previously opposed discriminatory conduct, in violation of the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Connecticut Fair Employment Practices Act (CFEPA) as well as Title VII of the Civil

Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA").

Id.

34.    On February 8, 2001, the CHRO issued its Notice of Final Agency Action

notifying the Plaintiff that the CHRO had dismissed through the Merit Assessment

Review process under Conn. Gen. Stat. § 46a-83(b). See Notice of Final Agency

Action, attached hereto as **Exhibit U**.  The CHRO dismissed the Plaintiff's claims for the

reason that there was no reasonable possibility that further investigation would result in

a finding of reasonable cause inasmuch as it was determined that:

- You were terminated due to poor performance of your job duties.
- There is undisputed documentation to verify that the profitability, customer service and customer loyalty rating ratings of the dealership declined so significantly during your tenure.   Additionally, there is also undisputed documentation to verify that a substantial number of the respondent's employees resigned while under your supervision.
- It was noted that you were hired when you were well over 40 and were terminated one year later.
- It was noted hat the decision makers with regard to your termination were within the same age range as you, and that approximately half of the respondent's workforce is over 40.
- The respondent has provided undisputed documentation to verify that it was aware of your race from the time of your hire, not from November 1999 as alleged.
- You did not provide any additional substantive information which might refute the response.

**Exhibit U**.

35.    The Plaintiff failed to request reconsideration of his dismissal from the

CHRO.  See Release of Jurisdiction, dated March 1, 2001, **Exhibit V**.

- 14 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

THE DEFENDANTS:
LOMBARD FORD and
ROBERT LOMBARD


By_____
　　James M. Sconzo
　　Fed. Bar # ct 04571 and
　　Kevin R. Brady
　　Fed. Bar #ct22135 of
　　HALLORAN & SAGE LLP
　　One Goodwin Square
　　225 Asylum Street
　　Hartford, CT 06103
　　(860) 522-6103

## **CERTIFICATION**

　　This is to certify that on this 24th day of February 2004, I hereby mailed a copy of the foregoing to:

Charles D. Houlihan, Jr.
Post Office Box 582
Simsbury, CT 06070

A. Paul Spinella
Spinella & Associates
One Lewis Street
Hartford, CT 06103


_____
　　Kevin R. Brady

518932.1

- 15 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105