UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERNESTO GALARZA | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:01CV986 (AWT) |
| VS. | : | |
| | : | |
| LOMBARD FORD and | : | |
| ROBERT LOMBARD | : | |
| Defendants. | : | FEBRUARY 24, 2004 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(e) and D. Conn. L. Civ. 56(a), the defendants, Lombard Ford, Inc. ("Lombard Ford") and Robert Lombard, submit this memorandum of law in support of their motion for summary judgment on all counts of the Complaint dated May 30, 2001.

## I.  PRELIMINARY STATEMENT

In April 1999, the Plaintiff commenced his employment with Lombard Ford as General Manager. Although the Plaintiff lacked experience as a General Manager from his previous employment, Rob Lombard, the Owner and President of Lombard Ford provided the Plaintiff the opportunity to relocate from New Jersey to work the dealership located in Winsted, Connecticut. Soon after the Plaintiff commenced employment with Lombard Ford, he failed to honor his assurances to Mr. Lombard that he would work long hours and not take time off during his first year. In fact, during the Plaintiff's one year employment at Lombard Ford, the dealership experienced a significant decrease in

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

customer satisfaction, significant employee turnover and yielded a net loss of profits of approximately $108,000.00 from the year preceding the Plaintiff's employment.

Despite these considerable employment deficiencies as the dealership's General Manager during only one year of employment, the Plaintiff maintains his remarkable claim that the Defendants terminated his employment and discriminated against him based on his race, ancestry color and national origin. For the reasons set forth herein, the Plaintiff can demonstrate no genuine issue of fact to support his claims and summary judgment must enter in favor of the Defendants on all counts of the Complaint dated May 30, 2001

## II.    FACTUAL BACKGROUND

### A.    The History and Performance of Lombard Ford

On March 15, 1982, Robert Lombard, as President, and his wife Patricia, as Secretary, founded Lombard Ford, which is located in Winsted, Connecticut and successfully operated the dealership for approximately twenty-two (22) years.  See Deposition Transcript of Robert Lombard, dated April 18, 2003, p. 5, attached hereto as **Exhibit A**.  Lombard Ford has received the Distinguished Achievement Award from Ford Motor Company for its sales and service for fifteen (15) of its (22) twenty-two years in business.  **Exhibit A**, p. 12.  The Lombards are also proud of the fact that their dealership has achieved one of the highest customer satisfaction ratings among Ford dealerships, resulting in the Chairman's Award in 1996, and consistent high ratings in customer satisfaction in 1997 and 1998. See QCP Quarterly Reports in 1996 and 1997,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

attached as **Exhibits B and C**; and Ford Customer Loyalty Report for 1998, attached as **Exhibit D**.  As result of dealership's ongoing ethic to sales and service, upon which it won the aforementioned Distinguished Achievement Award for 15 consecutive years in business, Lombard Ford won the President's Award from Ford Motor Company in 1999. Lombard Ford again won the President's Award in 2002.  **Exhibit A**, p. 15.  The Lombards attribute their success to their strong work ethic, working regularly six and seven days a week at the dealership, and their efforts to promote an honest and friendly dealership through training, close supervision, and overall appreciation of their sales force.  In addition, the Lombards formerly operated a successful boat dealership in Winsted under the name Offshore Speed and Ski, LLC.  **Exhibit A**, p. 7.

In early 1999, the Lombards decided to hire a General Manager to run Lombard Ford, in order to relieve them of some of their responsibilities at the dealership, and to allow them more time to make their boat dealership a success.  **Exhibit** A, p. 9.  Mr. and Mrs. Lombard sought an individual who would be with the dealership long-term, to oversee the operations of the dealership and run it in a profitable manner, who could operate the dealership with little or no supervision. Id.  The Lombards sought an individual who shared the same energy level and work ethic as they have, as well as the experience necessary for the position.  Id.

On February 19, 1999, Mr. Joe Holstein, a recruiter of Automotive Career Consultants of New England, informed Mr. and Mrs. Lombard of three (3) potential candidates for the General Manager position.  See Facsimile transmittal to Robert

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Lombard from Joe Holstein, dated February 19, 1999, attached hereto as **Exhibit E**. One of the candidates was the Plaintiff, Ernesto Galarza, from New Jersey. Id. Mr. Holstein provided Lombard Ford with the Plaintiff's resume and noted the Plaintiff's intention to move from New Jersey since "[t]he town [the Plaintiff] lives in show[s] signs of contamination (Time Magazine) so he wants to take his children where they can grow up without the treat of toxins in the air." **Exhibit E**. Mr. and Mrs. Lombard decided to interview the Complainant. **Exhibit A**, pp. 27-28.

**B.  Pre-Employment Discussions Between the Plaintiff and Lombard Ford.**

Mr. and Mrs. Lombard both interviewed the Plaintiff. **Exhibit A**, p. 27. When Mr. Lombard questioned the Plaintiff the reasons why he wanted to leave New Jersey, the Plaintiff 's wife indicated she wanted to move to the country and didn't want to live in New Jersey any longer. **Exhibit A**, p. 31. Specifically, the Plaintiff mentioned that he feared for his family's health because of a major environmental problem in Tom's River, where the Plaintiff lived. **Exhibit E.**

The Lombards informed the Plaintiff that their business was very different from where he was working. **Exhibit A**, pp. 33-35. The Lombards explained to the Plaintiff that while he had to be a strong leader, he would have to do it in a gentler way than what he was used to, since the applicant pool was much smaller in Winsted, and they did not have the ability to easily replace employees. (Plaintiff's Deposition pp. 148-49).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Although the Plaintiff's resume indicated he did not have experience running a dealership, and did not have much knowledge about parts and service, the Plaintiff told the Lombards that he was ready and able to put in the hours necessary to learn. **Exhibit E.** The Plaintiff's resume indicates that he did not possess any prior experience as a General Manager, but only had Sales Manager experience. Id. The Plaintiff told the Lombards that he worked long hours at his present job, sometimes working late into the evenings. (Plaintiff's Deposition, p. 113).

In discussing the sales and volume expectations of the dealership, the Lombards informed the Plaintiff that the dealership was working toward a goal of selling 100 vehicles per month, but that they were most concerned with the profitability of the sales rather than volume. **Exhibit A**, pp. 34-36. For example, they told the Plaintiff that 80 profitable sales per month was better than 100 non-profitable sales. Id., pp. 34-35.

In general discussion prior to his hiring, the Plaintiff openly discussed his nationality with Mr. Lombard. **Exhibit A**, pp. 31-34. Because the Plaintiff's name ended in "a," Mr. Lombard asked the Plaintiff whether he was Italian. Id., p. 32. The Plaintiff told Mr. Lombard that he was Spanish. Id. Mr. Lombard said that Spanish is close to Italian - - that "it's all Mediterranean blood" - - to which the Plaintiff joked about it. Id. Mr. Lombard continued to explain that he understood some Italian because his parents spoke the language, that he took Spanish in school, and that both languages were very similar. Id., pp. 32-33.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

On March 16, 1999, the Plaintiff submitted to Mr. and Mrs. Lombard a "business plan/compensation proposal," which contained his "game plan" for improving the dealership's business, as well as his compensation requirements. See Letter to Rob and Patty Lombard from Ernie Galarza, dated March 16, 1999, attached hereto as **Exhibit F**. The Plaintiff's business plan included plans for improving advertising efforts through maintaining demographic information of, and mailing out fliers to, their customers; properly training salespersons; implementing monthly sales goals; conducting monthly reviews of salespersons; create a busy, "buying" atmosphere in the dealership; setting up a simple internet website for the dealership; and provide monthly reports to Mr. and Mrs. Lombard as to what is and is not selling. See Id. Notably, the Plaintiff recognized:

> I am aware that I do not have the "full fleged" credentials that a true GM has. However, the statement I can learn. Service and parts can be lared. What I lack initially in the "back end" of the business I will make up in my exceptional strength in the "front." The new business and the new deals we close will be worth every penny paid to me.

Id. Among the Plaintiff's compensation plan requests was a $90,000 guaranteed annual salary with no commission in the first year, and a "one-year employment contract." Id.

Although Mr. and Mrs. Lombard had interviewed other applicants for the General Manager position, the Plaintiff's representations to them concerning his ability to work hard and long hours convinced the Lombards that the Plaintiff was the most qualified for the job. **Exhibit A**, p. 28.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

After informing the Plaintiff that they were interested in hiring him as General Manager, the Lombards discussed with the Plaintiff the terms of his employment.   In response to the Plaintiff's request for an employment contract, the Lombards informed the Plaintiff that no exception would be made to their policy that all employment is at-will, as outlined in their employment manual. <u>See</u> Lombard Ford, Inc., Employee Handbook, p, 1., attached hereto as **Exhibit G**; **Exhibit A**, pp. 48-49.  Moreover, the Plaintiff has admitted that he understood the terms of an at-will employment and was aware that there was no contract for employment with Lombard Ford.  **Exhibit P**, pp. 47-50.

The salary of $90,000 was well beyond what the Lombards had anticipated paying the Plaintiff, since they traditionally paid their sales managers a much smaller salary plus commissions.  **Exhibit A**, pp. 37-39.  The Plaintiff, however, told the Lombards that in exchange for his requested salary, he would work six days a week, whatever hours it took, with no time off in his first year, except for time off needed for matters relating to his move, and focus 100% on the dealership.  Based on these representations, the Lombards decided to take the risk and offered to pay the Plaintiff a salary of $88,000 for the first year, plus reimbursement of his moving expenses and living expenses for the first three months.  **Exhibit A**, pp. 47-48.  Mr. Lombard told the Plaintiff that he would receive a bonus plan in January for the year 2000, based on a percentage of net profits of the dealership less any used vehicle depreciation.  The Lombards told the Plaintiff that after the first year, his compensation structure would

- 7 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**Halloran**
**& Sage LLP**

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

change to a much smaller salary plus a commission based on the profits of the dealership.  **Exhibit A**, pp. 37-40.

Mr. Lombard had briefly mentioned to the Plaintiff that, if he turned out to be the right person for the General Manager position, there could be the possibility of some type of stock appreciation program, and that when it came time for him and Mrs. Lombard to sell an ownership percentage of the dealership, that he may be offered an option to buy in. **Exhibit A**, pp. 40-41. Mr. Lombard told the Plaintiff that he had to prove himself for an extended period of time before he would entertain any such deal. Moreover, Mr. Lombard never mentioned any ownership in the dealership.  Id.

### C.    The Plaintiff's Employment With Lombard Ford

The Plaintiff began working for Lombard Ford in early April 1999. See New Hire Information, Ernie Galarza, dated April 1, 1999, attached as **Exhibit H**.  The Plaintiff's first year as General Manager was nothing short of a disaster.  The Plaintiff did not honor any of the assurances he made to the Lombards, including his representation that he would work long hours and not to take time-off.  The Plaintiff's incompetence in managing Lombard Ford's business resulted in a significant decrease in customer satisfaction, more than 100% employee turnover, and a significant decrease in profits.

Lombard Ford's owner loyalty significantly decreased from 42% to 27% during the Plaintiff's employment.  See 1999 Ford Customer Loyalty Report, dated September 15, 2000, attached hereto as **Exhibit I**; *compare* 1998 Ford Customer Loyalty Report,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**Exhibit C**.  In fact, the Lombards had later learned from its employees that the Plaintiff

had been rude and obnoxious with customers. **Exhibit N**, Interrogatory No. 3, p. 2.

The Plaintiff was verbally abusive to employees. Id.  Specifically, the Plaintiff

yelled at and degraded salespersons in front of customers.  **Exhibit A**, pp. 79-80.  The

Plaintiff's conduct toward employees resulted in the highest employee turnover in all the

years Lombard Ford has been in business. **Exhibit A**, pp. 77-87.  On average, Lombard

Ford maintained approximately 42 employees in the years prior to the Plaintiff's

employment.  During the Plaintiff's one (1) year employment with Lombard Ford as

General Manager, the Plaintiff terminated four employees, and over fifty (50) other

employees quit. See Termination/Quits, Sales Department – April 1999 through April

2000; Termination/Quits Other Departments, April 1999 through April 2000, attached

hereto as **Exhibit J**; **Exhibit A**, pp. 73-75, 108-109.  The employee terminations during

the Plaintiff's employment as General Manager far outweighed employee terminations

in any of the prior years. See Table of Voluntary and Involuntary Terminations of

Employment, 1997, attached hereto as **Exhibit K**; **Exhibit A**, pp. 75.

Many if not all of these employees personally complained to the Lombards about

the Plaintiff's abusiveness towards them.  **Exhibit A**, pp. 79-80; **Exhibit N**, Int. # 3, p 2.

The Lombards discussed with the Plaintiff their concern with the employee turnover.

Despite attempts to correct the problems, the employee turnover went unabated.

Further, the Plaintiff was dishonest with the Lombards about the reasons for employee

departures.  For example, Sales Managers, Drake Viscone, made his opinion well

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

known that did not like the Plaintiff. **Exhibit A**, pp. 87-90. In early 2000, the Plaintiff told Mr. Lombard that Mr. Viscone had quit because he was unhappy with Mr. Lombard. Id. It was not until after the Plaintiff was terminated that Mr. Lombard found out that the Plaintiff had fired Mr. Viscone. Id.

The profitability of the dealership also suffered tremendously during the Plaintiff's one-year employment.  In 1999, although sales volume increased, the dealership lost approximately $108,000.00 more in profits than in the prior year.  See 1998 versus 1999 Profit Comparison, attached hereto as **Exhibit L**; **Exhibit A**, pp. 118-120.  The Lombards observed that despite their discussions with the Plaintiff he appeared to be solely focused on increasing sales volume rather than on profitability of sales. Id. Adding to the decrease in profitability of the dealership was the Plaintiff's excessive and unwise spending of the dealership's money. In fact, the dealership's expenses skyrocketed, doubling the amount spent in the previous year.  See Expense Comparison - January 1998 through October 2000, attached hereto as **Exhibit M; Exhibit A**, pp. 128-141.  For example, the Plaintiff never attempted to obtain a good rate on advertising costs. **Exhibit A**, pp. 130-33.  Moreover, the profit per vehicle decreased during the Plaintiff's employment as General Manager. **Exhibit A**, p. 128.

By January 2000, the dealership had been in the red for almost a year, and Mr. Lombard had considered terminating the Plaintiff.  Yet, Mr. Lombard felt badly about terminating the Plaintiff's employment considering that he had moved his family to Connecticut.  Notwithstanding the Plaintiff's poor performance, Mr. Lombard decided to

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

continue the Plaintiff's employment least until the end of his first year in April.  Given the

financial condition of the dealership, however, Mr. Lombard could not establish a bonus

the Plaintiff.  In fact, as the year progressed, the Plaintiff would not have earned a

bonus under any plan based on net profits. <u>See</u> **Exhibit L**.

The Plaintiff also failed to adequately hire, train and supervise his employees.

The Plaintiff would fail to carefully review applications for employment or check

references.  For example, the Plaintiff hired a salesperson who had just had a DWI,

which was clearly indicated on his employment application.  See Defendants'

Responses to Plaintiff's Interrogatories, dated November 29, 2002 and October 7, 2003,

attached hereto as **Exhibit N**. Mr. Lombard called the Plaintiff to his office and asked

him if he had read the employment application or checked the individual's references.

The Plaintiff responded in the negative.  **Exhibit A**, pp. 72-74.  Mr. Lombard told the

Plaintiff that this individual could not have the job, and that he could not hire another

person without an interview by Mr. Lombard. <u>Id.</u> The very next day, however, the

Plaintiff attempted to hire another employee without Mr. Lombard's approval. <u>Id.</u> The

Plaintiff also failed to train new salespersons before putting them onto the sales floor.

<u>Id.</u>, pp. 34-35; **Exhibit P**, p. 94; **Exhibit N**, Int. # 3, p. 2.   Mr. Lombard continually told

the Plaintiff that he could not put anyone out on the sales floor without full training.  Mr.

Lombard discussed with the Plaintiff several times the ways in which the employees

needed to be trained.  Mr. Lombard would still, however, found new, untrained

salespersons on the sales floor, and he would have to take them aside and train them

- 11 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

himself.  Although the Lombards had hired the Plaintiff in order to relieve them of the

supervisory responsibilities at the dealership, the Plaintiff's failures at hiring and training

employees resulted in Mr. and Mrs. Lombard having to assume these responsibilities on

many occasions.

The Plaintiff's promises to the Lombards that he would not take any time off in his

first year also went unfulfilled.  **Exhibit P**, p. 113.   The Plaintiff took over five (5) weeks

off in his first year.  See Daily Attendance Records, Ernie Galarza 1999-2000, attached

hereto as **Exhibit O**.  During the Plaintiff's one year employment with Lombard Ford, he

did not fulfill his representations of his energy level and ability to work long hours.

**Exhibit E.**  Moreover, the Plaintiff often complained to the Lombards about being tired

and needing time off.  The Lombards reluctantly allowed the Plaintiff to take the

requested time off, despite the Plaintiff's initial promises not to take time off in the first

year.  **Exhibit P**, pp. 113-15.

The Plaintiff also displayed conduct that led the Lombards not to trust him.  For

example, the Plaintiff once promised a customer that the dealership would deliver a

vehicle to England, and did not properly document the delivery at the time the vehicle

was picked up for transportation. See Deposition Transcript of Ernesto Galarza, pp. 71-

73, attached hereto as **Exhibit P**.  On  another occasion, the Plaintiff had sent vehicles

off the lot with incorrect temporary plates. **Exhibit P**, p. 69.   Both instances resulted in

customer complaints and compromised the dealership's compliance with Connecticut

Motor Vehicle laws.  Moreover, during the last several months of his employment, the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Plaintiff spent many days in his office on his computer when the work to be done on the computer did not warrant such an amount of time.  The Plaintiff would immediately clear his computer screen when Mr. or Mrs. Lombard entered his office. **Exhibit P,** p. 165.  Thereafter, the Plaintiff rearranged his desk in his office so that no one could see what the Plaintiff was doing on his computer.  After the Plaintiff's employment was terminated, the Lombards discovered that the Plaintiff had been frequently visiting pornographic sites on the internet during business hours. <u>See</u> Defendants' Dislcosure of Expert Witness dated June 14, 2002, attached hereto as **Exhibit Q**.

Despite Mr. and Mrs. Lombard's counseling the Plaintiff on a daily basis to try to get him to perform his job well, the Plaintiff took none of the counseling seriously.  Due to the Plaintiff's incompetence and untrustworthiness, in addition to his taking significant time off, the Lombards could not entrust the Plaintiff with operating the dealership, resulting in the Lombards having to perform many of the Plaintiff's responsibilities.  The Lombards decided in April 2000 that they would eliminate the Plaintiff's position. **Exhibit N**, Int. # 3 and 4, pp. 2-3.

Upon the Plaintiff's return from a week's vacation in early May 2000, Mr. Lombard told the Plaintiff that he was being laid off.  This was done in the presence of two management personnel.  When the Plaintiff asked Mr. Lombard for an explanation, Mr. Lombard told the Plaintiff that his position was being eliminated.  Given the Lombard's suspicions about the Plaintiff's activity on his office computer (which was

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

owned by the Lombard's business), the Plaintiff was not allowed to re-enter his office. **Exhibit P**, p. 136.

In light of the Plaintiff's job performance, the Lombards did not respond to the Plaintiff's request for a letter of recommendation.   After the Plaintiff's employment ended, the Lombards found out that the Plaintiff had lied to a potential employer about his accomplishments at Lombard Ford.  Specifically, a potential employer e-mailed Mr. Lombard, asking him to confirm the Plaintiff's assertions that he had voluntarily resigned from Lombard Ford, increased sales volume by 65%, increased per unit gross by $350, increased PRU's by $325, and increased the customer satisfaction index (V.O.C.) by 22%. See e-mail to Mr. Lombard, dated May 11, 2000, attached hereto as **Exhibit R**. Lombard Ford's records show that none of the Plaintiff's statements are true. (See **Exhibits B, C, D, I, L and M**.)   There is no longer a General Manager position at Lombard Ford, and the Lombards have not otherwise replaced the Plaintiff.  See Current Employee List, attached hereto as **Exhibit S; Exhibit A**, p. 20.

### D.    The Plaintiff's Administrative Complaint.

On September 20, 2000, the Plaintiff filed a Complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO").  See Affidavit of Illegal Discriminatory Conduct, dated September 20, 2000 attached hereto as **Exhibit T**.  The Plaintiff claimed that his termination from Lombard Ford constituted discrimination, harassment, and retaliation based on his race (Hispanic), national origin, color, age, alienage, ancestry, and for having previously opposed discriminatory conduct, in

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

violation of the Connecticut Fair Employment Practices Act (CFEPA) as well as Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA").  Id.

On February 8, 2001, the CHRO issued its Notice of Final Agency Action notifying the Plaintiff that the CHRO had dismissed through the Merit Assessment Review process under Conn. Gen. Stat. § 46a-83(b). See Notice of Final Agency Action, attached hereto as **Exhibit U**.  The CHRO dismissed the Plaintiff's claims for the reason that there was no reasonable possibility that further investigation would result in a finding of reasonable cause inasmuch as it was determined that:

- You were terminated due to poor performance of your job duties.
- There is undisputed documentation to verify that the profitability, customer service and customer loyalty rating ratings of the dealership declined so significantly during your tenure.   Additionally, there is also undisputed documentation to verify that a substantial number of the respondent's employees resigned while under your supervision.
- It was noted that you were hired when you were well over 40 and were terminated one year later.
- It was noted hat the decision makers with regard to your termination were within the same age range as you, and that approximately half of the respondent's workforce is over 40.
- The respondent has provided undisputed documentation to verify that it was aware of your race from the time of your hire, not from November 1999 as alleged.
- You did not provide any additional substantive information which might refute the response.

**Exhibit U**.  The Plaintiff failed to request reconsideration of his dismissal.  See Release of Jurisdiction, dated March 1, 2001, attached hereto as **Exhibit V**.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### D.    The Plaintiff's Civil Action.

On May 30, 2001, the Plaintiff filed the present action in United States District Court.  The Plaintiff alleges twelve counts against Lombard Ford and Robert Lombard individually.  The Plaintiff alleges that he was terminated because of his race, ancestry, color and national origin in violation of 42 U.S.C. § 2000e, et seq. and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60.  See Complaint, First Count, ¶¶ 28-32; Second Count, ¶¶ 38-39.[1]  In the Third Count, the Plaintiff alleges that he has been denied the right to enforce contracts, including the making, performance, modification, of contracts and the enjoyment of all benefits, privileges, terms and conditions of the employment relationship as agreed when the Defendants believed the Plaintiff was a white citizen in violation of 42 U.S.C. § 1981.  See Third Count, ¶ 46.

The Plaintiff further attempts to allege state law claims of negligent and intentional infliction of emotional distress; aiding and abetting discrimination; breach of the covenant of good faith and fair dealing; breach of contract; breach of implied contract; invasion of privacy; non-payment of wages; personal liability of Mr. Lombard; and statutory theft.  Complaint, Fourth through Twelfth Counts.

---

[1] Since the dismissal of the Plaintiff's claims from the CHRO, the Plaintiff has since abandoned his claims for age discrimination under the ADEA.  See **Exhibit U; Exhibit P.**, p, 153.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## III.    LAW AND ARGUMENT

### A.    Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c).  The burden is on the moving party to show that no material facts are in dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Once the moving party has met its burden, the opposing party must come forward with specific evidence that proves there is a genuine issue of material fact for trial.  Dusanenko v. Maloney, 726 F.2d 82, 84 (2d Cir. 1984); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505 (1986).  The Second Circuit has recognized that "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases … the salutary purpose of summary judgment – to avoid protracted, expensive and harassing trials – apply no less to discrimination cases than to … other areas of litigation."  Abo-Brisson v. Delta Airlines, Inc., 239 F.3d 456, 466 (2d. Cir. 2000) (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).  "Much more recently, the Supreme Court reiterated that trial courts should not treat discrimination differently from other ultimate questions of fact." Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097 (2000), quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524, 113 S. Ct. 2742 (1993)).  An employment discrimination plaintiff faced with a properly supported

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matusushita Electric Industry Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Rather, he must come forth with evidence sufficient to allow a reasonable jury to find in his favor.  Id.; Brown v. Henderson, 257 F.3d 246 (2d. Cir. 2001).

Under 28 USCA § 1367(c), district courts are given discretion to adjudicate state law claims over which the court has supplemental jurisdiction when the federal claims giving the court original jurisdiction have been dismissed.  See, e.g. White v. Martin, 23 F.Supp.2d 203, 206 n.6. (D.Conn. 1998) ("[h]aving dismissed all of plaintiff's claims upon which our federal jurisdiction is based, we could decline to exercise supplemental jurisdiction over the remaining state-law claims and dismiss them on that basis…However, because these claims are asserted against the [same] defendants as well, and because of the apparent lack of merit in the claims, we choose instead to consider the merits of [the defendant's] motion to dismiss these claims.")

**B.    The Plaintiffs Discrimination Claims Are Precluded Under the Doctrines of Res Judicata and/or Collateral Estoppel.**

The CHRO's dismissal of the plaintiff's discrimination claim has a preclusive effect on his claims in federal court. See Kalanquin v. Heublein, Inc., 1999 WL 1249285 (D. Conn. June 21, 1999)(Copy attached as **Exhibit W**).  In Kalanquin, the Court applied the doctrine of res judicata to give preclusive effect to the prior CHRO dismissal of the Plaintiff's disability discrimination claims, finding that the CHRO's administrative

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

procedures governing the Merit Assessment Review ("MAR") process provided the

Plaintiff with the requisite opportunity to litigate her discrimination claim.  Id. at *6.

Specifically, Kalanquin held that the statutory provisions that govern the MAR process

suggest that the plaintiff had an ample opportunity to fully litigate her claims.  Id. at * 4.

Moreover, the Second Circuit has held that an administrative agency's dismissal of a

complaint on its legal merits without an evidentiary hearing could nevertheless bar a

subsequent litigation on the same claim.  See Mitchell v. National Broadcasting Co., 553

F.2d 265, 271 (2d Cir. 1977).

    In this case, the CHRO dismissed the Plaintiff's claims through the MAR process

and found that there was no reasonable possibility that further investigation would result

in a finding of reasonable cause.  **Exhibit U**.  In a strongly worded opinion, the CHRO

found that the Plaintiff was terminated due to poor performance of his job duties; that

the profitability, customer service and customer loyalty ratings of the dealership declined

during the Plaintiff's employment, including the resignation of a substantial number of

the Defendants' employees; and that the Defendant provided undisputed documentation

to verify that it was aware of the Plaintiff's race since the time of his hire, not from

November 1999 as alleged. See **Exhibit U.**  As such, the plaintiff had an opportunity to

fully litigate his claims and these issues through the CHRO process.  Accordingly, this

Court must apply the doctrine of res judicata to bar the plaintiff's claims and preclude

the Plaintiff from re-litigating these claims in this action and grant summary judgment in

favor of the Defendants.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**C.    The Defendants Did Not Discriminate Against the Plaintiff on the Basis of Race in Violation of Title VII or CFEPA**

**1.    The Defendant is Entitled to The Same Actor Inference**

In cases where the hiring and firing decision maker is the same person, a "same actor inference" applies, <u>see</u> <u>Carlton v. Mystic Transp., Inc.</u>, 202 F.3d 129, 132, 137-38 (2d Cir.2000), and is "a highly relevant factor in adjudicating a motion for summary judgment on [a discrimination] claim." <u>Schnabel v. Abramson</u>, 232 F.3d 83, 91 (2d Cir. 2000).   "The premise underlying this inference is that if the person who fires an employee is the same person that hired him, one cannot logically impute to that person an invidious intent to discriminate against that employee." <u>Carlton</u>, 202 F.3d at 132; <u>Grady v. Affiliated Cent., Inc.</u>, 130 F.3d 553, 560 (2d Cir.1997).

In this case, Mr. Lombard was the individual responsible for the hiring and termination of the Plaintiff within a one year period.  **Exhibit A**, pp. 19-20; **Exhibit N**, Int. No. 3, p. 2.  Moreover, it is undisputed that Mr. Lombard was aware of the Plaintiff's race and national origin prior to his hire based on the discussions held during the three pre-employment meetings.  **Exhibit A**, pp. 31-34.  As such, one cannot logically impute that the same person who hired the Plaintiff cannot discriminate against him based on race and the Court should apply the same actor inference when analyzing the Plaintiff's discrimination claims.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### 2.     There is No Evidence of Discrimination

Even if the court had jurisdiction over the Plaintiff's discrimination claims, the Plaintiff can demonstrate no issue of fact in support of his claims because the defendants did not discriminate against him.  In Counts The Plaintiff alleges that he was terminated because of his race, ancestry, color and national origin in violation of 42 U.S.C. § 2000e, et seq. and the Connecticut Fair Employment Practices  Act, Conn. Gen. Stat. § 46a-60 ("CFEPA").  See Complaint, First Count, ¶¶ 28-32; Second Count, ¶¶ 38-39. The plaintiff's claim of discrimination is alternatively plead as an equal rights violation under 42 U.S.C. 1981 and a violation of Title VII. The same analysis applies to both claims.

The same standard applies to both the CFEPA and Title VII claims brought in this cause of action. See State v. Comm'n on Human Rights & Opportunities, 211 Conn. 464, 470, 559 A.2d 1120 (1989); Leak v. United Technologies Corp., 81 F.Supp.2d 373, 375-76 (D.Conn.1999). Under the burden-shifting rules set forth in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff has the initial burden of making out a prima facie case of discrimination. See id. at 802, 93 S.Ct. 1817; Farias v. Instructional Systems, Inc., 259 F.3d 91, 96-98 (2d Cir.2001). To make out a prima facie case, a plaintiff must demonstrate "(1) membership in a protected class; (2) satisfactory job performance; (3) termination from employment or other adverse employment action; and (4) the ultimate filling of the position with an individual who is not a member of the protected class." Farias, 259 F.3d 91, 96-98 (citing Quaratino v.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

*Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995)). "Alternatively, the fourth prong of the prima

facie case may be satisfied if the plaintiff can demonstrate that the discharge or adverse

employment action occurred under circumstances giving rise to an inference of

discrimination on the basis of plaintiff's membership in that class." Id. (*citing McLee v.*

*Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir.1997)); *see also James v. New York Racing*

*Ass'n*, 233 F.3d 149, 153-54 (2d Cir.2000).

If a plaintiff establishes a prima facie case, a presumption of discrimination is

created and the burden of production shifts to the defendant to articulate some

legitimate, nondiscriminatory reason for the adverse employment action or termination.

McDonnell Douglas, 411 U.S. at 802-03, 93 S.Ct. 1817; Farias, 259 F.3d 91, 96-98

(*citing James*, 233 F.3d at 154; *Quaratino*, 71 F.3d at 64). The defendant is not required

to prove that the articulated reason actually motivated its actions. Texas Dep't of

Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207

(1981) ("The defendant need not persuade the court that it was actually motivated by

the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue

of fact as to whether it discriminated against the plaintiff."). "If the defendant fails to

discharge the burden by presenting a nondiscriminatory reason, the plaintiff will prevail

(assuming the other aspects of the prima facie case are not contested)." James, 233

F.3d at 154.

If the defendant bears its burden of production, the presumption drops out of the

analysis, and the defendant " 'will be entitled to summary judgment ... unless the plaintiff



One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

can point to evidence that reasonably supports a finding of prohibited discrimination.' "
Farias, 259 F.3d 91, 98-99 (*quoting James*, 233 F.3d at 154). Evidence that the
defendant's articulated nondiscriminatory reason is false, when added to the prima facie
case, may or may not be "sufficient to support a reasonable inference that prohibited
discrimination occurred" and warrant submitting the case to the jury. *James*, 233 F.3d at
156; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S.Ct.
2097, 147 L.Ed.2d 105 (2000) ("[A] plaintiff's prima facie case, combined with sufficient
evidence to find that the employer's asserted justification is false, may permit the trier of
fact to conclude that the employer unlawfully discriminated.").

       In this case, the Plaintiff cannot meet his initial burden to demonstrate that he
satisfactorily performed in his position of General Manager for Lombard Ford to meet
the prima facie case.  Specifically, the Plaintiff's resume is devoid of any prior
experience as a General Manager, and the Plaintiff even conceded in his "game plan"
that he was not qualified to perform the functions of General Manager.  **Exhibit E**.
Moreover, the Plaintiff cannot raise any inference of discrimination due to the
Defendants filling his position with an individual who is not a member of a protected
class, because the Defendants have not subsequently hired anyone to fill the position of
General Manger.  **Exhibit** S.  As such the Plaintiff cannot meet his initial burden to
demonstrate the prima facie case of discrimination and summary judgment must enter
in favor of the Defendants.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Hᴀʟʟᴏʀᴀɴ
& Sᴀɢᴇ LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Even if the Plaintiff can meet his burden to demonstrate the prima facie case of discrimination, the defendants have articulated their legitimate, non-discriminatory reasons for the Plaintiff's termination based on the Plaintiff's inability to perform the position of General Manager at Lombard Ford, which resulted in decreased customer satisfaction, significant employee turnover and yielded a net loss of profits of approximately $108,000.00.  **Exhibits B through E; Exhibits I through L.**  In order to survive summary judgment by overcoming the Defendants' legitimate reasons for their actions, the Plaintiff "must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason ... is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." <u>Kerzer v. Kingly Mfg</u>., 156 F.3d 396, 401 (2d Cir.1998) (citation and internal quotation marks omitted). A "plaintiff may prevail only if an employer's proffered reasons are shown to be a pretext for discrimination, either because the pretext finding itself points to discrimination or because other evidence in the record points in that direction--or both." <u>Fisher v. Vassar College</u>, 114 F.3d 1332, 1339 (2d Cir.1997) (en banc).  Accordingly, since the Plaintiff cannot meet his burden to demonstrate the prima facie case of discrimination, much less sustain his ultimate burden to demonstrate that reasons for his termination were pretextual and based on intentional discrimination, summary judgment must enter in favor of the defendants on the First through Third and Sixth Counts of the Complaint.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**D.    The Plaintiff Cannot Raise Any Genuine Issue of Fact Regarding His Claim of Negligent or Intentional Infliction of Emotional Distress.**

In the Fourth Count, the Plaintiff alleges that the defendants should have realized that their conduct involved an unreasonable risk of causing emotional distress to the Plaintiff.  Complaint, Fourth Count, ¶ 53.  In the Fifth Count, the Plaintiff alleges that based on the conduct of the Defendants that they knew or should have known that emotional distress was a likely result of their conduct and that such conduct was "extreme and outrageous."  Complaint, Fifth Count, ¶¶ 59-60.

"In order to state . . .a claim [for negligent infliction of emotional distress], the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.)  <u>Parsons v. United Technologies Corp.</u>, 243 Conn. 66, 88 (1997).  Negligent infliction of emotional distress "arises only where it is based upon unreasonable conduct of the defendant in the termination process . . . The mere termination of employment, even where it is wrongful, is therefore, not, by itself, enough to sustain a claim for negligent infliction of emotional distress." (Citations and internal quotation marks omitted.) <u>Id.</u> at 88-89; <u>Morris v. Hartford Courant Co.</u>, 200 Conn. 676, 681-82, 513 A.2d 66 (1986).  Thus, the plaintiff must establish not that his punishment was severe or made him unhappy, but rather that his termination was unreasonable under the circumstances.  This the plaintiff cannot do.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In order to support a claim for intentional infliction of emotional distress, plaintiff must allege that (1) that the defendants intended to inflict emotional distress or they knew or should have known that emotional distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) that the defendants' conduct was the cause of plaintiff's distress; and (4) that the emotional distress sustained by plaintiff was severe.  Petyan v. Ellis, 200 Conn. 243, 253 (1986).  Additionally, in the employment context, the Connecticut Supreme Court has found, "the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."  Id. at 254, n. 5 (quoting Prosser & Keeton, Torts, § 12 at 60 (5th ed. 1984)).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Hill v. Pinkerton Security & Investigation Services, Inc., 977 F. Supp. 148, 159 (D. Conn. 1997) (citations omitted, internal quotation marks omitted).

"[N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process ... Accordingly ... [t]he mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of

- 26 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." <u>Perodeau v. Hartford</u>, 259 Conn. 729, 750, 792 A.2d 752. "The dispositive issue [is] whether the defendants conduct during the termination process was sufficiently wrongful that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." <u>Id</u>., at 751.

        In this case, the Plaintiff cannot demonstrate any conduct on the part of the defendants that it should have realized is conduct would result in harm or that was so outrageous in character to give rise to a claim for intentional infliction of emotional distress.  Moreover, under the holding of <u>Perodeau v. Hartford</u>, <u>supra</u>, emotional distress in the workplace cannot only arise in the context of termination. The Complaint, however, is devoid of any allegations during the Plaintiff's termination process that would give rise to a claim of negligent or intentional infliction of emotional distress. Moreover, the Plaintiff has not specifically alleged any alleged conduct that was "extreme and outrageous" to support a claim for intentional infliction of emotional distress.

        To the extent that the Plaintiff claims in his deposition that he sustained emotional during the termination process since he was not allowed to return to his office following his vacation, Courts have rejected that such conditions give rise to emotional distress.  <u>Appleton v. Board of Education</u>, 254 Conn. 205, 757 A.2d 1059 (2000) (no

- 27 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

cause of action for intentional infliction of emotional distress where principal made condescending comments to teacher in front of fellow colleagues, questioned her vision and ability to read, telephoned her daughter and represented that teacher had been acting differently and should take time off work, and then telephoned police, who escorted teacher out of building, and where teacher subjected to psychiatric examinations at request of board of education).  Accordingly, since the Plaintiff can raise no genuine issue for trial on is claims for intentional and negligent infliction of emotional distress, summary judgment must enter in favor of the defendants on the Fourth and Fifth Counts of the Complaint.

> **E.** **The Defendants are Entitled to Summary Judgment on the Seventh Count Alleging Breach of the Implied Covenant of Good Faith and Fair Dealing Because the Plaintiff has an Adequate Statutory Remedy Under General Statutes § 46a-60.**

In the Seventh Count, the Plaintiff claims the Defendants breached the Implied Covenant of Good Faith and Fair Dealing in that the Defendants alleged promise that the Plaintiff would receive a bonus and equity participation in the company; and alleged promises based on his relocation from New Jersey. Complaint, Seventh Count, ¶¶ 74-75. Moreover, the Plaintiff alleges that Lombard breached his obligation of good faith and fair dealing by tolerating, refusing to address and engaging in unlawful discrimination based upon race, ancestry, color and national origin.  The Plaintiff cannot sustain this claim because there is no evidence of either a public policy reason establishing the impropriety of his termination, the bad faith violation of a contract, or, in

- 28 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Hallorand
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

fact, a contract. The Defendants are entitled to summary judgment on this claim since

the Plaintiff has an adequate statutory remedy under General Statutes § 46a-60 through

which to address the alleged violations.

A cause of action for wrongful discharge is only recognized where the employer

has clearly contravened public policy. Sheets v. Teddy's Frosted Foods, Inc., 179 Conn.

471, 475, 427 A.2d 385 (1980). "The cases which have established a tort or contract

remedy for employees discharged for reasons in violation of public policy have relied

upon the fact that within the context of their case, the employee was otherwise without

remedy and that permitting the discharge to go unaddressed would leave a valuable

social policy to go unvindicated." (Emphasis in original; internal quotation marks

omitted.) Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 159-60, 745 A.2d 178 (2000).

Allegations of employment discrimination are "adequately enforceable through statutory

remedies and [do] not warrant judicial recognition of an independent cause of action."

Atkins v. Bridgeport Hydraulic Company, 5 Conn.App. 643, 648, 501 A.2d 1223 (1985).

The Connecticut Supreme Court has made it clear that a Plaintiff may not pursue

a common law claim for wrongful discharge based on public policy where she has an

adequate statutory remedy through which to seek redress such violations.  See

Burnham v. Karl & Gelb, P.C., supra, 252 Conn. 153.  In upholding the trial court's grant

of summary judgment to the defendants on the plaintiff's common law wrongful

discharge in violation of public policy claim, the Court recognized that such a claim

could not be sustained on a finding that certain conduct contravenes public policy, but

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

that the employee has to be "otherwise without a remedy." See Burnham, supra, 252

Conn. at 162 (citing,  Atkins v. Bridgeport Hydraulic Co., 5 Conn. App.  643 (1985)).

Even prior to the Supreme Court's decision in Burnham, a majority Connecticut

courts have consistently held that neither a wrongful discharge nor a breach of implied

covenant claim are available where there is an adequate statutory remedy through

which the alleged public policy violation can be enforced.  See Atkins v. Bridgeport

Hydraulic Co., 5 Conn. App. 643 (1985) (Plaintiff's common law wrongful termination

claim stricken where statutory remedy provided by the Connecticut Fair Employment

Practices Act); Hancock v. Stop & Shop Companies, Superior Court, judicial district of

New Haven, Docket No. 701061 (December 29, 1998, Zoarski, J.); Santanella v. SNET

CO., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No.

265398 (January 17, 1983, Dupont, J.)(denying cause of action for breach of covenant

of good faith and fair dealing in age discrimination case where statutory remedy is

available);  Glassover v. Audiotronics, Inc., 1984 Conn. Super. LEXIS 423, Superior

Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 0067383 (January

18, 1984, Meadow, J.) (No claim for breach of implied covenant of good faith and fair

dealing based on termination of Plaintiff in retaliation for complaints to CHRO stricken

because Connecticut anti-discrimination statutes provided adequate remedy).

In this case, the Plaintiff is attempting to allege a state law claim for breach of the

implied covenant of good faith and fair dealing.  Complaint, Seventh Count.  Because

the Plaintiff has a statutory remedy to vindicate his claims for wrongful discharge based



One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

on race, ancestry, color and national origin discrimination, specifically provided in the

Connecticut Fair Employment Practices Act ("CFEPA"), General Statutes § 46a-60(a) et

seq., the Defendants are entitled to summary judgment on the Seventh Count.

   **F.    No Genuine Issue for Trial Exists Regarding the Plaintiff's Breach of
          Contract or Implied Contract Claims.**

   In the Eighth Count, the Plaintiff alleges that he was entitled to be paid a

performance bonus; issued equity in the company; and that he would be employed for

life.  Complaint, Eighth Count, ¶¶ 85-90.  The Plaintiff alleges that the Defendants

breached this contact by terminating the Plaintiff.  Id., ¶ 91.  In the Ninth Count, the

Plaintiff alleges that an essential component of the contact was the Company's implicit

agreement that it would comply with federal and state law and provide a lawful working

environment free of discrimination. Complaint, Ninth Count, ¶ 96.  As set forth above,

the Plaintiff has an adequate statutory remedy for such claims and summary judgment

must enter in favor of the defendants on these counts.

   "The cases which have established a tort or contract remedy for employees

discharged for reasons in violation of public policy have relied upon the fact that within

the context of their case, the employee was otherwise without remedy and that

permitting the discharge to go unaddressed would leave a valuable social policy to go

unvindicated." (Emphasis in original; internal quotation marks omitted.) Burnham v. Karl

& Gelb, P.C., 252 Conn. 153, 159-60, 745 A.2d 178 (2000). Allegations of employment

discrimination are "adequately enforceable through statutory remedies and [do] not

- 31 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

warrant judicial recognition of an independent cause of action." <u>Atkins v. Bridgeport</u> <u>Hydraulic Company</u>, 5 Conn.App. 643, 648, 501 A.2d 1223 (1985).

The Connecticut Supreme Court has made it clear that a Plaintiff may not pursue a common law claim for wrongful discharge based on public policy where she has an adequate statutory remedy through which to seek redress such violations.  <u>See</u> <u>Burnham v. Karl & Gelb, P.C</u>., <u>supra</u>, 252 Conn. 153.  In upholding the trial court's grant of summary judgment to the defendants on the plaintiff's common law wrongful discharge in violation of public policy claim, the Court recognized that such a claim could not be sustained on a finding that certain conduct contravenes public policy, but that the employee has to be "otherwise without a remedy." See Burnham, supra, 252 Conn. at 162 (*citing*,  <u>Atkins v. Bridgeport Hydraulic Co</u>., 5 Conn. App.  643 (1985)).

In fact, the trial Court of this sate has granted an employer's motion to strike an employee's breach of contract claim where the employee had an adequate statutory remedy. <u>See</u> <u>D'Aquila v. Environmental Systems Products, Inc</u>., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 0455259 (November 18, 1993, Berger, J.) (granting Defendant's motion to strike breach of contract claim, based on an alleged failure to pay wages, because the Plaintiff had an adequate statutory remedy available under General Statutes § 31-72.)

The Connecticut Supreme Court has made clear that "[a] contract implied in fact, like an express contract, depends on actual agreement."  *D'Ulisse-Cupo v. Board of* *Directors of Notre Dame High School,* 202 Conn. 206, 214 n2, 520 A.2d 217, 218

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(1987). There must be an agreement "either by words or action or conduct, to undertake any form of actual commitment" to the Plaintiff. *Id.* In order to support contractual liability, "the defendants representations must be sufficiently definite to manifest a present intention on the part of the defendants to undertake immediate contractual obligation to the plaintiff." *Id.* at 214, 215.

The claims and factual circumstances in *D'Ulisse-Cupo* are strikingly similar to those in the case at bar, and are directly on point to this matter. In *D'Ulisse-Cupo*, a teacher had alleged that certain representations made to her constituted an implied contract. In that case, the plaintiff alleged that the principal of the school made oral representations "that there would be no problem with her teaching certain courses and levels the following year," and "that everything looked fine for her rehire next year," and "that she should continue her planning for the exchange program." *Id.* at 214. The plaintiff had also alleged that the school posted a notice on the school bulletin board stating: "All present faculty members will be offered contracts for next year." *Id.* The plaintiff also alleged that the defendants made another representation to her that "she would have a contract for the following year." *Id.* In reversing the holding of the Appellate Court, and upholding the judgment of the trial court, the Supreme Court, among other things, concluded that the plaintiff had not alleged specific enough facts to create a viable claim of breach of implied contract or detrimental reliance. See *Id.* at 212, n2. The Court held that the defendants' representations were "neither sufficiently promissory nor sufficiently definite to support contractual liability", because they were

– 33 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

"no more than representations indicating that the defendants intended to enter into another employment contract with the plaintiff at some time in the future" and that "these representations manifested no present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff." *Id.* at 214-215.  In further support of this ruling, the Court stated that "none of the representations contained any of the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of the plaintiff's employment, and her salary and fringe benefits."  *Id.* at 215.

In this case, an adequate statutory remedy exists to remedy the Plaintiff's alleged breach of contract claims.  Notwithstanding the existence of an adequate remedy at law for the Plaintiff's claims, he has admitted that he understood the terms of an at-will employment and was aware that there was no contract for employment with Lombard Ford.  **Exhibit P**, pp. 47-50.  Indeed Mr. Lombard had rejected the Plaintiff's request that his contract be reduced to writing and for a stated duration of one-year. **Exhibit F**. Moreover, the Plaintiff has also admitted that he was aware that any such alleged promise by the Defendants regarding a bonus or that he would be employed "for life" were contingent and based on his performance.  Id.

In addition, since no genuine issue of fact exists regarding the Plaintiff's claims for breach of contract, the Plaintiff cannot maintain a cause of action for non-payment of wages under Conn. Gen. Stat. § 31-72 against either Lombard Ford or Robert Lombard, individually as set forth in the Eleventh and Twelfth Counts.  Accordingly, the

- 34 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

defendants are entitled to summary judgment on the Eighth and Ninth, Eleventh and Twelfth Counts of the Complaint.

      **G.**      **The Defendants are Entitled to Summary Judgment on the Plaintiff's claims of False Light Invasion of Privacy.**

In the Tenth Count, the plaintiff alleges that the Defendant improperly inquired as to the racial identity of the Plaintiff's son and specifically inquired to determine the Plaintiff's racial and ethnic origins. Complaint, Tenth Count, ¶ 102.  In this count, the Plaintiff sets forth a confusing set of facts, which inappropriately attempts to set forth a claim of false light.

False light is defined as "publicity that unreasonably places the other in a false light before the public."  Goodrich v. Waterbury Republican- American, Inc., 188 Conn. 107, 128 (1982) quoting Restatement (Second) Torts, § 652A. The elements of this tort in Connecticut include the requirement that "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  Goodrich, 188 Conn. at 131 *quoting* Restatement (Second) Torts, § 652E.  Moreover, the essence of such a claim is that the published matter be both untrue and such a "major misrepresentation of [the plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken" by a reasonable person under the circumstances. Goodrich, 188 Conn. at 131.  "As long as the matter published is substantially true, the defendant was

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

constitutionally protected from liability for a false light invasion of privacy." <u>Goodrich v.</u>

<u>Waterbury Republican-American, Inc.</u>, 188 Conn. 107, 132 (1982.)

To the extent the Plaintiff is attempting to allege that Mr. Lombard inquired into

his racial identity and/or racial or ethnic origins, that the Plaintiff was Hispanic, the

Plaintiff had openly discussed this issue in his initial employment interviews. **Exhibit A**,

pp. 31-34. As such, it is undisputed that the Defendant was aware of the Plaintiff's

ethnic origin during his pre-employment interviews. <u>Id.</u> Moreover, the Plaintiff had

disclosed his race on his employee information form. **Exhibit H.** As such, there can be

no cause of action for false light, as long as the matter published, i.e., that the Plaintiff is

Hispanic, is substantially true. Accordingly, the Defendants are entitled to summary

judgment on this count.

### 1.    There Was no Publication

"'Publicity' ... means that the matter is made public, by communicating it to the

public at large, or to so many persons that the matter must be regarded as substantially

certain to become one of public knowledge.... Thus it is not an invasion of the right of

privacy ... to communicate a fact concerning the plaintiff's private life to a single person

or even to a small group of persons." <u>Grossman v. Computer Curriculum Corp.</u>,

131 F.Supp.2d 299, 311 (D.Conn. 2000) quoting Restatement (Second), Torts § 652D,

cmt. a. In this case, the Plaintiff's allegations in the Tenth Count are devoid of any

allegations of publication. To the contrary, the Plaintiff merely alleges that Lombard

began to discriminate against the Plaintiff in terms and conditions of employment and

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

does not allege that Lombard had made the matter public whatsoever. Complaint, Tenth Count, ¶ 105. As such, since the Plaintiff's claim for false light lacks publication, his claim must fail and summary judgment must enter in favor of the Defendants.

### 2.    Any Alleged Statements Were Privileged

The Plaintiff alleges that in order to disguise his racial and ethnic prejudices, Lombard began to case Plaintiff in a false light as an incompetent manger. Complaint, Tenth Count, ¶ 107. Any statements made by the Defendants in the workplace regarding the Plaintiff's performance are subject to a qualified privilege. See Torosyan v. Boehringer Ingelheim Pharmaceuticals, 234 Conn. 1, 29, 662 A.2d 89 (1995) ("communications regarding the review on an employee's job performance and the preparation of documents regarding an employee's termination are protected by a qualified privilege."). The Court in Miles v. Perry,11 Conn.App. 584, 595 (Conn.App. 1987), enumerated five elements needed to establish a qualified privilege defense: (1) an interest to be upheld; (2) a statement limited in its scope to this purpose; (3) good faith; (4) a proper occasion; and (5) a publication in a proper manner to proper parties only.

Unless the Plaintiff can prove that a statement was made with actual malice, he cannot overcome the privilege. Bleich v. Ortiz, 196 Conn. 498, 504, 529 A.2d 1999 (1987) (qualified privilege may be overcome on finding of malice). Actual malice requires that the statement, when made, be made with actual knowledge that it is false or with reckless disregard of whether it is false. Milkovich v. Lorain Journal Co., 497

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

U.S. 1, 14, 110 S.CT 2695, 111 L.Ed. 2d 1 (1990); <u>Woodcock v. Journal Publishing Co.</u>, 230 Conn. 525, 527, 646 A.2d 92 (1994).

In this case, the Defendants terminated the Plaintiff his inability to perform the position of General Manager at Lombard Ford, which resulted in decreased customer satisfaction, significant employee turnover and yielded a net loss of profits of approximately $108,000.00. **Exhibits B through E; Exhibits I through L.** Notwithstanding the truth of any alleged statement by the Defendants regarding the Plaintiff as in incompetent manger are an absolute defense to defamation, the Defendants are entitled to a qualified privilege.  The Defendants certainly have an interest to be upheld in the success of its business of achieving the Distinguished Achievement Award for fifteen (15) consecutive years.  **Exhibit A**, p. 12. Moreover, any alleged statements to the Plaintiff were regarding this purpose and limited to the scope of the Plaintiff's performance. <u>Id.</u>  Moreover, the Defendants declined to provide the Plaintiff with a reference which would eliminate any publication.  As such, the Court should hold that the Defendants are entitled to a qualified privilege and enter summary judgment in their favor.

 **H. The Plaintiff Cannot Raise Any Genuine Issue Of Fact In Support of his Alleged Cause of Action For Statutory Theft.**

In Count Thirteenth Count, the Plaintiff alleges that when Lombard discovered the Plaintiff's race and ethnic origin, he decided to terminate the Plaintiff's employment and to abrogate the agreement to pay performance bonuses and to award equity in the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

company.  Complaint, Thirteenth Count, ¶ 131.  The Plaintiff further alleges that by falsely enticing the Plaintiff with repeated promises of enhanced compensation for recognized stellar performance, the Defendants deceived the Plaintiff and stole the services of the Plaintiff.  Id., ¶ 134-35.  Notwithstanding the fact that the Plaintiff has an adequate remedy at law for his discrimination claims, the Plaintiff's claims for theft under Conn. Gen. Stat. § 52-564 are completely without merit.

The elements for establishing civil theft under Section 52-564 of the Connecticut General Statutes are "synonymous with larceny under General Statutes § 53a-119." Lauder v. Peck, 11 Conn. App. 161, 165 (1987).  Pursuant to Section 53a-119, "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from the owner."  The plaintiffs have failed to plead, and cannot prove, that the Dealership or Mr. Lombard detained his property with an intent to deprive him of that property or appropriate the same to itself or a third person.

> [T]o "deprive" another of property means (A) to withhold it or cause it to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him, or (B) to dispose of the property in such a manner or under such circumstances as to render it unlikely that an owner will recover such property.  (4) To "appropriate" property of another to oneself or a third person means (A) to exercise control over it, or to aid a third person to exercise control over it, permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit or (B) to dispose of the property for the benefit of one's self or a third person.
> Conn. Gen. Stat. § 53a-118(a)(3) and (4).

- 39 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Not only has the Plaintiff failed to plead the element of intent for his claim of statutory theft, he has failed to plead, and cannot prove, any facts to support a claim that the defendants intended to either deprive the plaintiff of his property or appropriate such property as those terms are defined by statute.

Under Connecticut case law, one must prove statutory theft under Section 52-564 by clear and convincing evidence.  Suarez-Negrete v. Trotta, 47 Conn. App. 517, 520 (1998).  Under the circumstances of this case, the Plaintiff cannot meet this higher standard of proof, when he has admitted that he understood the terms of an at-will employment and was aware that there was no contract for employment with Lombard Ford. **Exhibit P**, pp. 47-50.   Accordingly, the Defendants are entitled to summary judgment on the Thirteenth Count of the complaint.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## IV.     CONCLUSION

For all the above reasons, the Defendants respectfully request the Court to enter

summary judgment in their favor on all counts of the Complaint dated May 30, 2001.

THE DEFENDANTS:
LOMBARD FORD and
ROBERT LOMBARD

By_____
    James M. Sconzo
    Fed. Bar # ct 04571 and
    Kevin R. Brady
    Fed. Bar #ct22135 of
    HALLORAN & SAGE LLP
    One Goodwin Square
    225 Asylum Street
    Hartford, CT 06103
    (860) 522-6103

## <u>CERTIFICATION</u>

This is to certify that on this 24th day of February 2004, I hereby mailed a copy of
the foregoing to:

Charles D. Houlihan, Jr.
Post Office Box 582
Simsbury, CT 06070

A. Paul Spinella
Spinella & Associates
One Lewis Street
Hartford, CT 06103

_____
Kevin R. Brady

417719.1

- 41 –

HALLORAN
& SAGE LLP

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105