UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ERNESTO GALARZA** | : | |
| | : | **CIVIL ACTION NO.** |
| | : | |
| **v.** | : | **3:01 CV 986 (AWT)** |
| | : | |
| | : | **April 3, 2007** |
| **LOMBARD FORD and ROBERT** | : | |
| **LOMBARD** | : | |

### PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

Ernesto Galarza, Plaintiff herein, responds to the court's order to show cause as follows:

**Procedural History**

This is an action for employment discrimination. The EEOC/CHRO charge was filed on September 26, 2000.  The complaint was filed in this court on May 30, 2001. Following discovery, Defendants filed a motion for summary judgment in 2004, and it was denied in 2006.

The parties requested mediation and appeared before Magistrate Judge Martinez on December 6, 2006.  The matter did not settle, and the parties were instructed to contact the court on December 20, 2006 to indicate whether any further sessions were warranted.  The parties remained unable to reach resolution.  To avoid undermining the

potential for settlement by incurring additional fees to prepare the Joint Trial Statement, little or no work occurred during the mediation period.

The Joint Trial Statement deadline had been extended to accommodate the mediation effort and was due to be filed on January 16, 2007.  On that date, Defendants' counsel sent his portion of the statement to Plaintiff's counsel.  For the reasons stated below, Plaintiff's counsel was unable to perform the work necessary to submit the Statement.

**Impediments to Statement Preparation**

Throughout the course of this case, Attorney Houlihan has had primary responsibility for its progress and pleadings.  He attended all depositions by himself, responded to discovery, and prepared the summary judgment opposition.

In 2006, Attorney Houlihan's wife joined his office as the sole legal secretary and assistant.  In November 2006, she underwent significant abdominal surgery which prevented her from actively returning to work for three months.  Her absence adversely impacted the flow of work within the office, but was not expected to be a significant adverse impact on the productivity of the office.  For that reason, a substitute was not hired.

Counsel and his wife cared for her ailing father in their home since 2000.  In November 2006, he became seriously ill.  He died at their home, with the assistance of Connecticut Hospice on November 30, 2006 at the age of 96.  During time of his illness and the out-of-state funeral arrangements, counsel was the only person in the household who could drive a car, and the family emergency imposed significant time restrictions.  Except for the mediation of this case and the preparation of the mediation

statement, little substantive work was accomplished by counsel in November and December.  The personal demands upon counsel's availability were significant, and the emotional impact of the loss was enervating.

These matters seriously disrupted the handling of legal matters at counsel's office, and the crush of work exceeded counsel's ability to respond in a timely manner. Counsel began to complete the Joint Trial Statement in January 2007.  Because of the two year hiatus during the pendency of the summary judgment motion, it was necessary for counsel to review the deposition transcripts, evidence and accumulated notes to prepare the statement, and was simply unable to do so.  The preparation of requested jury instructions also required a review of legal developments to determine whether prior jury instructions remained valid statements of the law.

At the end of February, counsel had a post-funeral commitment to travel with his wife out of the country.  He returned with a case of 'tourista' and a prescription for Cipro to cure his intestinal woes.  Combined, counsel was effectively out of his office the first two weeks in March.

During the weekends of March 24-25 and March 30-April 1, Plaintiff's counsel conducted the necessary deposition transcript reviews and prepared the requests for jury instructions.

**Status of Joint Trial Statement**

At some time shortly after Defendant presented his portions of the Joint Trial Statement, Plaintiff revised the stipulated facts and transmitted it.  No final agreement has been reached on those points.

The undersigned finally completed the Plaintiff's requested jury charge on April 2, 2007 and transmitted the entire reformatted Joint Trial Statement to Defendant. A true copy of the proposal is attached hereto. Defendant's counsel is out of the office for several days this week and has been unable to review the Statement and reply.  Plaintiff therefore requests that the parties submit their signed Joint Trial Statement by no later than April 13, 2007.

**Conclusion**

The delay in filing the Joint Trial Statement is a serious matter for which the undersigned accepts responsibility.  This case has involved nearly a seven year commitment from counsel, accruing significant unpaid time and expense, and counsel desires to have the matter resolved sooner rather than later.  Counsel has failed in his obligation to the court, and requests that Plaintiff not be penalized or otherwise sanctioned because counsel has unable to meet the Joint Trial Statement deadline.

 The Joint Trial Statement is intended to be a comprehensive submittal, requiring great care with the preparation and submission.  Since the mediation did not conclude until late December, no comprehensive review of the facts, evidence and deposition testimony had been performed by Plaintiff's counsel since the summary judgment proceedings 2 ½ years before.  Given the disruptions to counsel's practice and the demands of the Statement, Plaintiff's counsel was unable to produce the necessary product consistent with the court's deadlines.

Plaintiff requests the opportunity to proceed with this case and obtain a resolution on the merits.

**ERNESTO GALARZA,
PLAINTIFF**

By: _____

Charles D. Houlihan, Jr.
Federal Bar No. CT 11416
Post Office Box 582
Simsbury, CT 06070

Telephone:   (860) 658-9668
E-Mail:      charles.houlihan@sbcglobal.net
Telecopier:   (860) 658-1339

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been mailed by United States mail, certified mail, return receipt requested, postage pre-paid to the following:

Robert A. Rhodes, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880
(203) 227-2855

on April 3, 2007.

_____

Charles D. Houlihan, Jr.
Commissioner of the Superior Court

# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ERNESTO GALARZA** | : | |
| | : | **CIVIL ACTION NO.** |
| | : | |
| **v.** | : | **3:01 CV 986 (AWT)** |
| | : | |
| | : | **April 2, 2007** |
| **LOMBARD FORD and ROBERT** | : | |
| **LOMBARD** | : | |

## JOINT TRIAL STATEMENT

## 1.    TRIAL COUNSEL

Plaintiff's Counsel:                              Defendants Counsel:

Charles D. Houlihan, Jr.                          Robert A. Rhodes
Post Office Box 582                               Halloran & Sage, LLP
Simsbury, CT 06070                               315 Post Road West
860.658.9668                                     Westport, CT 06880
fax: 860.658.1339                                (203) 227-2855
charles.houlihan@sbcglobal.net

A. Paul Spinella
Spinella & Associates
One Lewis Street
Hartford, CT 06103

## 2.    JURISDICTION

Civil Rights Action:  28 U.S.C. § 1331, 28 U.S.C. § 1367, 42 U.S.C. § 2000e

## 3.    Jury Trial

4.    **NATURE OF CASE**

The plaintiff claims that he was terminated from his position as general manager because of his race, ancestry, color and national origin in violation of 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. §1981, and Conn. Gen. Stat. Ann. § 46a-60 and in breach of contract.

The plaintiff is also asserting claims for breach of contract based on an alleged oral promise of an equity ownership in the defendant dealership.

5.    **STIPULATIONS OF FACT AND LAW**

a.    The plaintiff was hired to be the general manager of the defendant automobile dealership in March of 1999.

b.    The plaintiff actually served as general manager from approximately April 1, 1999 until his termination on or about May 1, 1999.

c.    There was no written contract for employment, bonus or an equity interest in the dealership.

d.    The Lombard Ford was and is engaged in an industry affecting interstate commerce and is an employer within the meaning of 42 U.S.C. §2000e (b).

e.    Plaintiff duly and timely filed a complaint of national origin, alienage, ancestry, color, and race discrimination with the Connecticut Commission on Human Rights and Opportunities (the "CHRO") and the Equal Employment Opportunity Commission (the "EEOC').  (The "CHRO/EEOC Charge")

f.    The CHRO/EEOC Charge alleged that Plaintiff experienced such illegal discrimination during the course of his employment at Lombard Ford in violation of Conn. Gen. Stat. Ann. § 46a-60 and 42 U.S.C. §2000e.

g.    The CHRO a release of jurisdiction pursuant to Conn. Gen. Stat. Ann. §46a-101 permitting Plaintiff to institute a civil action.

h.    The EEOC has issued to Plaintiff a notice of right to sue.

## 6.     PLAINTIFF'S CONTENTIONS

Plaintiff was hired as the general manager of Lombard Ford, lured by the promise of attaining ownership in the company.  Defendant Lombard indicated to others that Plaintiff was of Italian descent.  For the first several months, Plaintiff was regularly complimented by Lombard for improving the business of the dealership.  When Lombard discovered that Plaintiff was Hispanic, he began to treat him in a demeaning and hostile manner.

Plaintiff made his goal to achieve the Ford Motor Company's President's Award, the highest level of recognition of a Ford dealership.  Lombard believed that the President's Award was impossible to achieve during his first year.  The dealership received the President's Award, and Plaintiff was summarily fired by Defendants. Defendants discriminated against Plaintiff on the basis of race, ethnicity, and heritage. Plaintiff alleges violations of 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. §1981, and Conn. Gen. Stat. Ann. § 46a-60 and breach of contract.

## 7.     DEFENDANTS' CONTENTIONS

The defendants contend that the plaintiff termination from his position as general manager was completely unrelated to his race or ethnicity.  The plaintiff was terminated because of the high turnover of employees during his tenure and his failure to increase the profitability of the business.

The defendants also contend that the plaintiff was an employee at will who could be terminated for any reason or no reason at all.  The defendants deny any contracts concerning a bonus or an equity interest in the dealership.

## 8.     LEGAL ISSUES

a.     Has the plaintiff established a prima facie case of discrimination on the basis of  race, ancestry, color or national origin .

b.     Have the defendants set forth legitimate non-discriminatory reasons for the plaintiff's termination.

c.     Has the plaintiff proven by a preponderance of the evidence that the reasons set forth by the defendants are false and that the real reason for his termination is because of his race, ancestry, color and national origin.

d.    Has the plaintiff proven the existence of a contract concerning his claim of an equity interest in the defendant dealership.

e.    Has the plaintiff proven that Defendants repudiated Plaintiff's employment contract because Plaintiff's race, to wit, an Hispanic of Ecuadorian ancestry, and denied him the enjoyment of all benefits, privileges, terms and condition of the employment relationship as agreed when Defendants believed Plaintiff was a white citizen.

f.    Has the plaintiff proven the existence of an employment contract which provides that he can only be terminated for cause.

g.    Has the plaintiff proven that he was not terminated for cause.

## 9.    VOIR DIRE QUESTIONS

<u>PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS</u>

a.    Have you or any members of your immediate family been accused of racial or ethnic bias in a work setting?

b.    Have you or any members of your immediate family been sued, or threatened to be sued, by an employee or someone who worked under your supervision?

c.    Do you disagree with the right of someone to file suit if they believe that they have been the subject of illegal discrimination?

d.    Do you believe that discrimination claims are usually excuses for poor job performance?

e.    If the jury finds that Defendants engaged in illegal discrimination, would you be able to consider an award of damages to Plaintiff in accordance with the instructions of the Court?

f.    Do you believe that a victim of illegal discrimination should not be awarded monetary damages under any circumstances?

g.    Could you follow the court's instructions to award monetary damages against Defendants if the evidence meets the standards given to you by the court?

<u>DEFENDANTS' PROPOSED VOIR DIRE QUESTIONS</u>

1.      Have you or any members of your immediate family ever been fired from a job?

2.      Have you or any members of your immediate family ever brought a claim or lawsuit against an employer or former employer?

3.      Have you or any members of your immediate family ever brought a claim or lawsuit because you believed that you have been the subject of any type of discrimination?

4.      Do you believe that you or any members of your immediate family have ever been the subject of any type of discrimination by an employer or former employer?

5.      Does the fact that the plaintiff is Hispanic and claims that he was terminated because of his ethnicity provide you with any doubt that you could be a fair, impartial and objective juror in this matter?

6.      Have you or any members of your immediate family ever been involved in any disputes, claims or lawsuits with an automobile dealer?

7.      Does the fact that one of the defendants is an automobile dealership provide you with any doubt that you could be a fair, impartial and objective juror in this matter?

8.      Does the fact that one of the defendants is a business, and not an actual person, provide you with any doubt that you could be a fair, impartial and objective juror in this matter?

**10.    Witnesses**

        Plaintiff's Proposed Witnesses:

        a.      Ernesto Galarza will testify concerning his background and experience, the hiring process at Lombard Ford, Lombard's constant ethnic and racial comments, Lombard's high level of satisfaction with him until Lombard was informed that Defendant was of Hispanic ancestry instead of Italian ancestry, that the employment record was altered to reflect an earlier disclosure of his ancestry, that Lombard refused to hire African-American salesmen, that Lombard insisted on terminated various employees for age, that Lombard did not believe that Plaintiff could cause Lombard Ford to earn the President's Award, the highest level of recognition by Ford of its dealerships at that

time, that Plaintiff caused Lombard Ford to earn the President's Award and that Lombard terminated his employment because of his Hispanic heritage.

b. Cathy Galarza, Plaintiff's wife, will testify concerning the actions and statements made by Mr. and Mrs. Lombard during the interview process, the reasons Plaintiff accepted the position at Lombard Ford, his work intensity and the emotional distress caused by the termination.

c. Ernesto Galarza, Jr. will testify concerning his temporary employment at Lombard Ford and the emotional stress and turmoil caused to his father by his termination at Lombard Ford.

d. Brandy Turner, 185 New Ludlow Rd Apt 210, Chicopee, MA 01020-4356 will testify to Plaintiff's work ethic and leadership at the dealership.

e. Joseph Holstein will testify concerning the promises which induced Plaintiff to move to Lombard Ford.

f. Lawrence D. Copp of Economic & Policy Resources, Inc. 2141 Essex Road, Suite 5, Williston VT 05495-1660 will testify with respect to the findings of his economic assessment of the damages sustained by Plaintiff.

g. Donald Hiller, 106 Ledge Road, Winsted, CT 06098-4129 was cheated by Mr. Lombard on a full commission for a sale.

h. David Bettignole will testify that he was routinely referred to as "The Hebe".

i. Heather Verdone will provide testimony concerning the accounting work she performed for Lombard Ford and Mr. Lombard's boat dealership.

Defendants' Proposed Witnesses

1. Rob Lombard will provide testimony concerning the hiring and termination of the plaintiff, as well, as his job performance.

2. Patricia Lombard will provide testimony concerning the hiring and termination of the plaintiff, as well, as his job performance.

3.      Heather Verdone will provide testimony concerning the plaintiff's job performance, her experience working with the plaintiff, and the financial status of Lombard Ford during the plaintiff's tenure

4.      David Bettigole, PO Box 529, Winsted, CT 06098, will provide testimony concerning his experience working with the plaintiff.

5.      Edward O'Brien, 94 Fern Circle, Waterbury, CT 06708, will provide testimony concerning his experience working with the plaintiff.

6.      David Vacila, 24 Eddy Road, Winsted, CT 06098, will provide testimony concerning his experience working at Lombard Ford during the plaintiff's tenure as general manager.

7.      Ralph Hazen, 10 Ruth Cross, Hill, Winsted, CT 06098, will provide testimony concerning his experience working at Lombard Ford during the plaintiff's tenure as general manager.

8.      Daryl Case, 72 Pine Street, Winsted, CT 06098, will provide testimony concerning his experience working at Lombard Ford during the plaintiff's tenure as general manager.

9.      Ed Kendrall, 18 Hazelmeadow Place, Simsbury, CT 06070, will provide testimony concerning his experience working at Lombard Ford during the plaintiff's tenure as general manager.

10.     Mark Jones, 1229 Winsted Rd. #23, Torrington, CT 06790, will provide testimony concerning his experience working at Lombard Ford during the plaintiff's tenure as general manager.

11.     Raymond Barrett, 251 Round Hill Rd., Bristol, CT 06010, will provide testimony concerning his experience working at Lombard Ford during the plaintiff's tenure as general manager.

12.     John Dagata, 99 Tosun Rd., Wolcott, CT 06716, will provide testimony concerning his experience working at Lombard Ford during the plaintiff's tenure as general manager.

13.    Donald Hiller, 106 Ledge Dr., Winsted, CT 06098, will provide testimony concerning his experience working at Lombard Ford during the plaintiff's tenure as general manager.

14.    Drake Viscome, 112 E. Main St., Pawling NY 12564, will provide testimony concerning his experience working at Lombard Ford during the plaintiff's tenure as general manager.

15.    Gene Fercodini, 19 Andrea Ave., Wolcott, CT 06716, will provide testimony concerning his experience working at Lombard Ford during the plaintiff's tenure as general manager.

16.    Expert Witness Bruce Patterson will provide testimony concerning the use of the internet on the laptop computer used by the plaintiff during his employment with Lombard Ford.  Mr. Patterson's testimony will be consistent with his report which has been disclosed to plaintiff's counsel.  A copy of his c.v. has also been disclosed.

17.    Joe Holstein, P.O. Box 271762, West Hartford, CT 06127, will provide testimony concerning the negotiation of the terms and conditions of the plaintiff's employment with Lombard Ford.

## 11.    EXHIBITS

<u>Plaintiff's Proposed Exhibits</u>

1.    1984 Report

2.    Report of Lawrence D. Copp of Economic & Policy Resources, Inc.

3.    Plaintiff's Action Plan for reinvigorating Lombard Ford.

4.    Magazine announcing President's Award.

5.    1998, 1999, 2000, 2001 Income Tax Returns as necessary to support the findings in the report of  Lawrence D. Copp.

<u>Defendant's Proposed Exhibits</u>

1.    Federal Tax Returns for Lombard Ford, Inc. for 1998

2.    Federal Tax Returns for Lombard Ford, Inc. for 1999

3.    Federal Tax Returns for Lombard Ford, Inc. for 2000

4.    Federal Tax Returns for Lombard Ford, Inc. for 2001

5.    Employment Application completed by Ernesto Galarza

      Plaintiff's Objection: Foundation as to ethnicity statement.

6.    List of separated employees during plaintiff's employment with Lombard Ford.

7.    List of separated employees prior to plaintiff's employment with Lombard Ford

      Plaintiff's Objection:  relevancy and materiality.

8.    List of separated employees after plaintiff's employment with Lombard Ford.

      Plaintiff's Objection: relevancy and materiality.

9.    Profit summary during plaintiff's employment with Lombard Ford and the year prior to plaintiff's employment.

      Plaintiff's Objection: Lack of Foundation.  Defendant must prove or produce all business records upon which the summary is based.

10.    Report of Bruce Patterson

11.    Attendance Records of Ernesto Galarza

12.    List of Awards received by Lombard Ford

      Plaintiff's Objection: Relevance.  Different awards for different years are based on differing criteria, which must be proven.

13.    Correspondence from Joe Holstein re: terms of plaintiff's employment dated March 16, 1999

14.    Survey Reports from Ford Motor Company

**Joint Trial Statement - Page 14**

<u>Plaintiff's Objection</u>: Not previously produced.

15.    Lombard Ford policy concerning wages and benefits of separated employees.

16.    Income Tax Return of Ernesto Galarza for 2000.

17.    Income Tax Return of Ernesto Galarza for 2001.

## 12.    DEPOSITION TESTIMONY

Deposition of Andrew M. Ashman, representative of Ford Motor Company.
    Pages 1-95, inclusive

    Pages 100-105

## 13.    PROPOSED JURY CHARGES

See Attached.

## 14.    ANTICIPATED EVIDENTIARY PROBLEMS

The defendants will be filing motions in limine regarding the admissibility of racially derogatory remarks allegedly made by Robert Lombard, and the admissibility of testimony by the plaintiff's expert economist.

## 15.    PROPOSED FINDINGS AND CONCLUSIONS

Not applicable.

## 16.    TRIAL TIME

Defendants' counsel anticipates that trial will take approximately 5 days.

## 17.    FURTHER PROCEEDINGS

Plaintiff reserves the right to submit its application for attorneys fees post-judgement in accordance with existing practice.

The defendants will be filing a motion to bifurcate the trial concerning the issue of punitive damages.

**18.    ELECTION BY TRIAL BY MAGISTRATE**

The defendants do not object to trial before a Magistrate Judge.  However, Magistrate Judge Martinez has already presided over a lengthy settlement conference in this matter.


**PLAINTIFF**
**ERNESTO GALARZA**

**THE DEFENDANTS:**
**LOMBARD FORD and ROBERT**
**LOMBARD**


By: _____

    Charles D. Houlihan, Jr.
    Federal Bar No. CT 11416
    Post Office Box 582
    Simsbury, CT 06070
    Telephone:   (860) 658-9668
    charles.houlihan@sbcglobal.net
    Telecopier:   (860) 658-1339

By: _____

    Robert A. Rhodes
    Fed. Bar # ct 13583
    HALLORAN & SAGE LLP
    315 Post Road West
    Westport CT 06880
    (203) 227-2855

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been mailed by United States mail, certified mail, return receipt requested, postage pre-paid to the following:

Robert A. Rhodes, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880
(203) 227-2855

on April 2, 2007.

_____
Charles D. Houlihan, Jr.
Commissioner of the Superior Court

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

I.    DISCRIMINATION BASED ON RACE AND ANCESTRY UNDER CFEPA AND TITLE VII

In this case, the plaintiff claims that he was terminated from his position as General Manager with Lombard Ford because he is of Hispanic ancestry.  Under the law, the plaintiff has the burden of proving this claim.

First, the plaintiff must prove what is called a prima facie case.  To make out a prima facie case, a plaintiff must demonstrate (1) membership in a protected class; (2) satisfactory job performance; (3) termination from employment or other adverse employment action; and (4) the ultimate filling of the position with an individual who is not a member of the protected class.

If you find that the plaintiff has failed to prove any of the elements of a prima facie case, you must find in favor or the defendants and render a verdict in their favor.

However, if you find that the plaintiff has proven the elements of a prima facie case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action or termination.

You must keep in mind that the defendant is not required to prove or persuade you that the articulated reason actually motivated its actions.  The defendant only bears the burden of producing or articulating a legitimate nondiscriminatory reason for the plaintiff's termination.  In this case, the defendants claim that the plaintiff was terminated because of lack of performance, specifically, the high turnover of personnel and the failure to increase profits.

Once the defendant articulates a legitimate discriminatory reason for the plaintiff's termination, you must find in favor of the defendants and render a verdict in their favor unless the plaintiff can prove, by a preponderance of the evidence, that: (1) the reasons offered by the employer were mere false or unworthy of belief and (2) more likely than not the plaintiff's race was the real reason for his termination.

It is not necessary for you to decide whether the reasons for the plaintiff's termination, offered by the defendants, were wise, fair, or even correct, so long as they truly were the reasons for the plaintiff's termination.  Even a reasoned decision based on incorrect facts is not evidence of pretext.  You, as a jury, should not substitute your judgment for that of the defendants.  The defendants must be given latitude and autonomy to make business decisions, including workplace reorganization and terminations, as long as they do not violate the law.  The plaintiff must ultimately prove that he was terminated because of his race and ethnicity.

II.    Stray Remarks

In the present case, the plaintiff has testified that Mr. Lombard made racially derogatory comments during the course of his employment.  These allegations have been denied. You must first decide whether any of these alleged statements was ever made. In the event that you determine that Mr. Lombard made any racially derogatory statements, such statements are not necessarily evidence of discrimination.  For a comment in the workplace to be sufficient evidence for discrimination, it must be (1) related to the protected class of persons of which the plaintiff is a member, in this case the class of persons of Hispanic race and ethnicity; (2) the racially derogatory statements must have been made contemporaneous to the termination; (3) the racially derogatory statements must have been made by and individual with authority over the decision to terminate the plaintiff; and (4) the racially derogatory statements must have been causally related to the decision to terminate the plaintiff. If the remarks that you heard through testimony do not meet these four requirements, they are not sufficient evidence of discrimination and cannot independently support a finding that the plaintiff was terminated because of his race or ethnicity.

III.    SAME ACTOR INFERENCE

In considering whether discrimination based on race or ancestry played was the cause of the plaintiff's termination, you should also consider what is called the "same actor inference."  In cases where the hiring and firing decision maker is the same person, a "same actor inference" applies. The premise underlying this inference is that if the person who fires an employee is the same person that hired him, one cannot logically impute to that person an invidious intent to discriminate against that employee. In other words, you can infer that because Mr. Lombard hired the plaintiff, he would not then terminate him because of his race or ancestry.  This is particularly the case where, as here, the individual accused of discrimination aggressively pursued hiring the plaintiff.

In this case, it is undisputed that Mr. Lombard was the individual responsible for the hiring and termination of the Plaintiff within a one year period.  Therefore, you may consider this fact in your determination as to whether the plaintiff was subject to discrimination based on race or ancestry concerning his termination.

IV.    AFTER-ACQUIRED EVIDENCE IN SUPPORT OF TERMINATION

In this case, the defendants also contend that, while the plaintiff was an at will employee who could be terminated for any reason or no reason at all, they discovered information after the plaintiff's termination which provides cause for his termination.

The role of after-acquired evidence is relevant to the relief or damages awarded to a successful plaintiff in employment cases.

(1) after-acquired evidence of the employee's wrongdoing must be taken into account in determining the specific remedy, lest the employer's legitimate concerns be ignored. (2) As a general rule, neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds. The proper measure of back pay presents a more difficult problem. Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, it cannot be required to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if it might have gone undiscovered absent the suit. The beginning point in formulating a remedy should therefore be calculation of back pay from the date of the unlawful discharge to the date the new information was discovered.

(3) Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone had the employer known of it at the time of the discharge.

Therefore, if you find that the plaintiff was terminated because of his race or ancestry, but find that the evidence discovered by the defendant's concerning the plaintiff's unauthorized use of a computer justified his termination, the only damages which he would be entitled to are lost wages from the date of his termination to the date in which the defendant's discovered his unauthorized use of the computer.

V.    BREACH OF CONTRACT

The plaintiff has also claimed that the defendants have breached a contract for employment in this case.  Specifically, the plaintiff claims that the defendants did not pay a bonus that he claims he was entitled to under an alleged employment contract; that the plaintiff was promised employment for life; and that he was promised an equity interest in the dealership. The defendants deny that any express employment contract ever existed and contend that the plaintiff was an employee at will.  The defendants further deny that the plaintiff was promised a bonus, employment for life or an equity interest in the company.

The traditional rule in Connecticut governing employment at will contracts of permanent employment or employment for an indefinite term, is that such contracts are terminable at the will of either party without regard to cause.

All employer-employee relationships not governed by express contracts involve some type of implied contract of employment. There cannot be any serious dispute that there is a bargain of some kind; otherwise, the employee would not be working.

Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, as a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will.  Under Connecticut law, an employee who is terminable at will, may be terminated at any time with or without cause.

In order to sustain a cause of action for breach of an implied contract of employment, the plaintiff has the burden of proving by a fair preponderance of the evidence that the employer agreed, either by words or action or conduct, to undertake some form of actual contractual commitment to him under which he could not be terminated without just cause.

The plaintiff must also prove the existence of a contract by proving the required elements of a contract.  The plaintiff must prove an offer, acceptance and consideration.  Consideration is a benefit to the party promising or a loss or detriment to the party to whom the promise is made.

These elements can be inferred from the acts and conduct of the parties.   The test is whether the conduct and acts of the parties show an agreement.

Another indispensable element of a contract is a "meeting of the minds" upon the subject of the contract.  A meeting of the minds is defined as mutual agreement and assent of two parties to contract to specific substance and terms. It is an agreement reached by the parties to a contract and expressed therein, or as the equivalent of mutual assent or mutual obligation. This definition refers to fundamental understandings between the parties as to what are the essential elements or subjects of the contract. It

refers to the terms of the contract, not to the power of one party to execute a contract as the agent of another.

In general, to form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties.  If the minds of the parties have not truly met, no enforceable contract exists.  An agreement must be definite and certain as to its terms and requirements.  So long as any essential matters are left open for further consideration, the contract is not complete.  A contract requires a clear and definite promise.  In order to support contractual liability, the defendants' representations must be sufficiently definite to manifest a present intention on the part of the defendants to undertake immediate contractual obligation to the plaintiff.  An agreement to agree to a material term at a later time is no agreement at all and is unenforceable.

In this case, as a threshold question, you must first determine whether the plaintiff has proven that there was an express contract of employment rather than an implied contract for employment at will, which merely included terms concerning wages, working hours and job responsibilities.

Second, if you determine that there was an express contract for employment, you must determine if there was an express agreement that the plaintiff could only be terminated for cause.

Third, if you have determined that there was an express agreement that the plaintiff could only be terminated for cause, you must determine if the plaintiff has proven that he was terminated without cause.

Fourth, if you have determined that there was an express contract for employment, you must also determine whether the plaintiff has proven that there was a specific contractual agreement concerning a bonus or a specific agreement concerning an equity interest in the dealership.

Fifth, if you have determined that there was an express contractual agreement concerning the specific terms and conditions of a bonus, you must determine whether the plaintiff has proven that he fulfilled these terms and that the defendant breached these terms.

Sixth, if you have determined that there was an express contractual agreement concerning the specific terms and conditions of an equity interest in the dealership, you must determine whether the plaintiff has proven that he fulfilled these terms and that the defendant breached these terms.

VI.    STATUTE OF FRAUDS

While the defendants deny that there were any contracts or agreements concerning an equity ownership in the dealership, the defendants also assert the affirmative defense of the Statute of Frauds.  Under the Statute of Frauds, no civil action may be maintained upon any agreement that is not to be performed within one year from the making thereof … unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged.    In other words, if the terms of an agreement are not to be performed within a year of the making of the agreement, the agreement or contract must be in writing in order to be enforceable.  In this case, there are no written agreements or contracts concerning the transfer or buy in of an equity interest in the defendant dealership.

If you determine that there was no contract concerning an equity interest in the dealership, you must render a verdict in favor of the defendants on this claim and do not have to consider this affirmative defense.  However, if you find that there was an oral contract concerning an equity interest in the dealership, you must then determine if the terms of that contract were to have been completed in a period of one year from the date of the oral contract.  If you find that the terms were not to have been completed within a year, you must render a verdict in favor of the defendants on this claim.

VII.    PUNITIVE DAMAGES

In this case, should you find that the defendant, Lombard Ford, discriminated against the plaintiff by firing him based on his race or ancestry, you may also award punitive damages should you feel that this case warrants such an award.  The awarding of punitive damages is not mandatory and is left to your discretion based on the guidelines I will provide you.

The purpose of punitive damages is to punish Lombard Ford and deter them from similar conduct in the future.  Punitive damages are available when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.
Although there is no mathematical formula to compute punitive damages, such an award must bear a reasonable relationship to the plaintiff's injury and any malicious intent by Lombard Ford.  Because neither compensation nor enrichment is a valid purpose of punitive damages, an award should not be so large as to constitute a windfall to the plaintiff. Punitive damages should not be greater than any amount necessary to punish a defendant and deter such conduct from occurring again.  An award should not be so high as to result in financial ruin of the defendant . . . nor should it constitute a disproportionately large percentage of a defendant's net worth".

VIII.   CREDIBILITY OF WITNESSES

The jury determines the credibility of witnesses and the weight to be given to their testimony.  No fact is determined merely by the number of witnesses testifying for or against.  It is quality, not quantity, of testimony that controls.

The credibility of a witness may be impaired or completely destroyed by impeaching testimony, such as illegal or criminal conduct on the part of the witness.  It may have been impeached by cross-examination; it may be affected by the appearance of the witness upon the stand; by his or her interest in the outcome; or by evident ignorance to facts to which he or she testifies.  You may consider these matters in weighing the testimony in this case.

In passing on the credibility of each of the witnesses, there are certain considerations you may well have in mind:
Ask whether the story a witness has told is plausible.  Does it ring true?  Or are there inconsistencies in it?  How does it fit in with other evidence in the case that you believe and other facts you find to have existed?  Does it mesh with that evidence and those facts?

You may well ask yourselves in passing on the credibility of any witness whether that witness has any bias or prejudice with regard to any party to the action and, if so, whether he or she has permitted that bias or prejudice to color their testimony. A jury should always bear in mind that if a witness has a decided bias or prejudice, or has interest in the outcome of the case, that there lurks the temptation to sway or shade one's testimony.  In assessing witnesses' testimony, you may properly apply your own knowledge of human nature and of the motives that influence and control human action. You have the right to bring to bear upon testimony in court the same tests of veracity that would be used in the every day affairs of life.  You are at liberty within your own sound judgment to choose what testimony you will believe and to discard in whole or in part the testimony of any others.

It is your duty as jurors to harmonize the evidence as far as it reasonably can be done.  You are to test the evidence of the several witnesses by your own knowledge of human nature and of the motives which influence and control human nature, using the same good judgment which you apply to facts which are daily presented to you for your consideration and decision.

Wright and Ankerman, Connecticut Jury Instructions, Volumes I and II, §§ 318, 640,641, 645

(4th ed. 2000);

Connelly v. Connecticut Co., 107 Conn. 236 (1928).

IX.    MITIGATION OF DAMAGES

One who has been injured by another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries.  This is known as the duty to mitigate one's damages.  This rule is one of good faith and reasonable conduct, and the requirement is met when the plaintiff does what a reasonable prudent person would be expected to do under the same circumstances to prevent the aggravation of injuries already received and to effect a recovery from such injuries.

       The test of good faith and reasonable conduct must be applied under all the conditions surrounding the plaintiff at the time.

       If you find that the plaintiff in this action acted in good faith, resorted to such means and adopted such methods as were reasonably within his reach in order to make his damages as small as possible, then you won't have to consider the question of whether the damages should be diminished.

       If, on the other hand, you find that he fell short of that test, that he did not act in good faith, and did not resort to such means and adopt such methods as were reasonably within his reach to make his damage as small as possible, then you ought to take off from the damages which otherwise you would award to him such sum as you think fairly measures the amount to which his damage has been increased by reason of his failure in his duty in this respect.

Miller v. Lovett, 879 F.2d 1066, 1070 (2d Cir. 1989)

X.    EXPERT WITNESSES

Now, in weighing and considering the testimony of the so-called experts, in determining to what extent you will attach weight to the opinions which they gave, you are to apply to them the same rules that you apply to any witness, insofar as it relates to the interest, bias, or prejudice, appearance and demeanor upon the witness stand, frankness and candor, and so forth.  You are to determine whether these witnesses are possessed of peculiar and exclusive knowledge and experience in a specialized field. The value which, of course, is to be attached to the testimony and the weight to be accorded, will of course depend upon many other things:  Upon the actual skill possessed by the so-called expert, by the experience he has had, and by the training he has had.  Has his experience and training been long or brief?  Has it been practical or theoretical?  Has it been under circumstances where reasonably and logically he has acquired a skill peculiar and greater than that of others, or otherwise?

In considering the testimony of these experts further, you should ask yourselves: What opportunity have the experts had to analyze and study the actual accident scene? Has the length of time of their investigation been adequate?  Has the opportunity by which they could have gained personal knowledge been sufficient?

Those are matters to which you are to give such consideration as your own good judgment suggests.  Finally, as the witnesses testified before you, have they produced before a rational and reasonable basis in support of the opinion which they venture?  As they testify, does their mode of testifying indicate care, skill, intelligence, and candor, or does it indicate the contrary?  Would they undertake to support their opinion by relating it to some basis in fact, is the basis, which they bring forth in support of that particular opinion, reasonable and logical and, in your minds, a sound basis?

 Wright, Conn. Jury Instructions § 325

In resolving any conflict that may exist between the testimony of two different expert witnesses, you should weigh the opinion of one expert against the other.  In doing so, you should consider the relative qualifications, experience and credibility of the expert witness, as well as the reasons for each opinion and the facts on which the opinions are based.

Wright, Conn. Jury Instructions, 2d ed. § 325

XI.    ATTORNEYS FEES NOT TO BE CONSIDERED BY JURY

In awarding damages in this case, you should not be concerned by any attorney's fees to which the plaintiff's attorney may be entitled to for handling this civil lawsuit.  That is a matter for the Court to consider, and may be awarded over and above any damages awarded by you.  The fees to which the plaintiff's attorney may be entitled for handling this case are not a proper element of damages and should not be a part of your deliberations.


Bodner v. Haeckel, 86 CV 338 (JAC)

# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ERNESTO GALARZA** | : | |
| | : | **CIVIL ACTION NO.** |
| | : | |
| **v.** | : | **3:01 CV 986 (AWT)** |
| | : | |
| | : | **April 2, 2007** |
| **LOMBARD FORD and ROBERT** | : | |
| **LOMBARD** | : | |

## PLAINTIFF'S JURY INSTRUCTION REQUESTS

Plaintiff submits the following requests for instruction to the jury.

**ERNESTO GALARZA**
**PLAINTIFF**


By: _____

Charles D. Houlihan, Jr.
Federal Bar No. CT 11416
Post Office Box 582
Simsbury, CT 06070

Telephone:   (860) 658-9668
E-Mail:      charles.houlihan@sbcglobal.net
Telecopier:   (860) 658-1339

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been mailed by United States mail, certified mail, return receipt requested, postage pre-paid to the following:

Robert A. Rhodes, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880
(203) 227-2855

on April 2, 2007.

_____
Charles D. Houlihan, Jr.
Commissioner of the Superior Court

**REQUEST NO. 1.**

MOTIVATING FACTOR
ELEMENTS AND BURDEN OF PROOF

As to the plaintiff's claim that his race, ancestry, color and national origin was a motivating factor for the defendant's decision to discharge him, the plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1.      the plaintiff was discharged by the defendant; and

2.      the plaintiff's race, ancestry, color and national origin was a motivating factor in the defendant's decision to discharge the plaintiff.

If you find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove either of these elements, your verdict should be for the defendant.

The plaintiff seeks damages against the defendant for a hostile work environment while employed by the defendants. In order to establish a hostile work environment based upon  race, ancestry, color and national origin discrimination, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1. the plaintiff was subjected to verbal comments, criticisms, slights, demeaning acts or other verbal or physical conduct relating to plaintiff's race, ancestry, color and national origin.

2.      the conduct was unwelcome;

3.      the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive or hostile work environment;

4.      the plaintiff perceived the working environment to be abusive or hostile; and

5.      a reasonable man in the plaintiff's circumstances would consider the working environment to be abusive or hostile.

Whether the environment constituted a hostile work environment based upon race, ancestry, color and national origin discrimination is determined by looking at the totality

of the circumstances, including the frequency of the harassing conduct, the severity of the conduct, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance.

## REQUEST NO. 2

## ADVERSE EMPLOYMENT ACTION

An action is an adverse employment action if it materially affects the terms, conditions, or privileges of employment.

## TANGIBLE EMPLOYMENT ACTION DEFINED

Tangible employment  actions are the means by which a supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment action requires an official act of the enterprise, a company act. A tangible employment action consists of a significant change in employment status such as firing.

**REQUEST NO. 3**

**Hostile Environment (alternative)**

Plaintiff has alleged that he experienced unlawful discrimination by the acts and omissions of Lombard Ford and Robert Lombard, namely, that the alleged discrimination based on plaintiff's race, ancestry, color and national origin created a hostile or abusive working environment.  The Plaintiff must prove, by a preponderance of the evidence, three things: (1) the plaintiff was a member of a protected class was subjected to conduct or words which a reasonable person would find unwelcome, hostile, or abusive; and (2) the plaintiff must also prove that he himself perceived the conduct or words to be unwelcome, hostile, or abusive; and (3) that defendants knew or had reason to know of the hostile environment, and despite knowing or having reason to know, failed to take prompt and effective measures to correct it.

As to the first element, in determining whether a reasonable person would perceive the defendants' actions or words to be unwelcome, abusive, or hostile, you may consider all of the circumstances in evidence, including, but not limited to: the frequency of any conduct claimed to be discriminatory; the severity of any such conduct; whether such conduct was pervasive or isolated; whether the conduct was physically threatening or humiliating, or merely offensive speech; whether the conduct unreasonably interfered with the employee's work performance, that is, whether the working conditions created a hostile environment which made performing the job more difficult.

As to the second element, the plaintiff must prove that he himself found the conduct or words to be unwelcome, hostile, or abusive.  In making this determination, you should consider all of the relevant circumstances that are in evidence.  While the plaintiff need not show that the offensive conduct or words affected her psychological well-being in order to succeed on her claim, doing so could be a factor in concluding that the plaintiff actually found the working environment to be abusive.

As to the third element, you may find the defendants responsible in the event that you find its officials knew or had reason to know of the hostile environment, and despite knowing or having reason to know, failed to take prompt and effective measures to correct it.

**REQUEST NO. 3**

The "discrimination" which plaintiff complains of in this action is discrimination because of his race, ancestry, color or national origin.   In this connection, and in regard to plaintiff's claims that he was deprived of rights, privileges, or immunities secured by federal law, I would instruct you that various standards of the United States prohibit discrimination based upon race, color or national origin in the conditions of employment. Federal law provides in pertinent part that: "(a) It shall be an unlawful employment practice for an employer–

> '(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.'

Section 2000e-2 of 42 U.S.C.

Plaintiff contends that he was discriminated against because he is of Hispanic descent.

**REQUEST NO.** 5

**RETALIATION–DEFENSE–NON-RETALIATORY REASON–PRETEXT**

If you find that the plaintiff has proven all three elements of plaintiff's retaliation claim by a preponderance of the evidence, you must find in favor of the plaintiff unless the defendant has articulated a legitimate, non-retaliatory explanation for the adverse employment action taken against the plaintiff.  If the defendant has articulated a non-retaliatory explanation for the unfavorable action taken against the plaintiff, then you must find in favor of the defendant unless the plaintiff proves by a preponderance of the evidence that the defendant's alleged explanation is merely a pretext for impermissible retaliation.

In order to prove that the defendant's alleged explanation is a pretext for impermissible retaliation, the plaintiff must show both that the explanation is false and that retaliation was the real reason for the defendant taking the adverse employment action against the plaintiff.

If the plaintiff proved that the defendant's legitimate non-retaliatory reason was merely a pretext for impermissible retaliation, you must find in favor of the plaintiff unless the defendant proves by a preponderance of the evidence that the defendant would have taken the adverse employment action against the plaintiff even in the absence of retaliatory intent or motive.

Adopted from Ninth Circuit Model Civil Jury Instructions

# REQUEST NO. 6

## Intentional Infliction of Emotional Distress

The plaintiff also contends that the defendants intentionally inflicted emotional distress.  To successfully advance a cause of action for intentional infliction of emotional distress, the plaintiff must prove four elements: (1) that the defendants intended to inflict emotional distress or that they knew, or should have known, that emotional distress was a likely result of defendants' conduct; (2) that the conduct was extreme and outrageous; (3) that the defendants' conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.  When I use the terms "extreme" and "outrageous," I mean that the defendants' conduct must have exceeded all bounds usually tolerated by a decent society.  To find for the plaintiff, the extreme and outrageous conduct of the defendant must have been so extreme, in your judgment, as to go beyond all possible bounds or decency and to be regarded as atrocious and utterly intolerable in a civilized community.  If you have determined that the defendants intended to inflict emotional distress on the plaintiff, or that they should have known that emotional distress would likely result, and that the defendants' conduct was extreme and outrageous, you must also conclude that the defendants' conduct actually caused the plaintiff's distress.  Lastly, you must also conclude that the plaintiff has proven by a preponderance of the evidence that the emotional distress she sustained was severe.  Collins v. Gulf Oil Co., 605 F. Supp. 1519 (D. Conn. 1985); Reed v. Signoid Corp., 652 F. Supp. 129 (D. Conn. 1986); Petyan v. Ellis, 200 Conn. 243 (1986).

**REQUEST NO. 7**

**Extreme and Outrageous Conduct – Defined**

Extreme and outrageous conduct is conduct which goes beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community.  Extreme and outrageous conduct is conduct which would cause an average member of the community to immediately react in outrage.  Emotional distress includes all of the highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, anger, fear, anxiety and worry.

# REQUEST NO. 8

Damages

If you determine that one or more of the defendants are liable to the Plaintiff for the wrongs alleged in this action, based upon any of the claims raised, you should then consider damages.  The object of an award of damages is to place the injured party, as near as may be possible, in the situation he would have occupied, if the wrong had not been committed.  Within the guidelines of these instructions, the amount to be awarded rests largely in your good discretion. <u>Albemarle Paper Company vs. Moody</u>, 422 U.S. 405 (1975).  You should allow Ernesto Galarza  such amount of money as will reasonably compensate him for the damages resulting from the wrongful conduct of the defendants.  Actual damages are designed to provide compensation for such out-of-pocket losses such as medical expenses, loss of wages, earnings, and costs incurred by criminal trial.  While mental and emotional distress may be hard to quantify, they are clearly compensable.  They include damages for injuries resulting from stigmatization, invasion of privacy, interference with personal development, anxiety, embarrassment, nervousness, humiliation, and injury to reputation and dignity.

**REQUEST NO. 9**

**42 U.S.C. §1981**

The plaintiff claims damages under Title 42, Section 1981. This section reads as follows:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

The statute protects individuals from employment practices which discriminate on the basis of race. For the purpose of this case, Section 1981 entitles an person of Hispanic descent to equal opportunity and treatment in employment. In order for Plaintiff to establish his claim, Plaintiff has the burden of proving by a preponderance of the evidence that Defendant had a racially discriminatory purpose or motive in the adverse employment actions taken. It is not easy to prove motive directly because there sometimes is no way to fathom or scrutinize the operations of the human mind. But you may infer the defendants' intent from the surrounding circumstances.

**REQUEST NO. 10**

**Section 1981 – Elements**

The Plaintiff's civil rights claim against Defendants in this case has the following essential elements:

First, that Lombard Ford and Robert Lombard intentionally discriminated against Plaintiff with respect to his race, ancestry, color and national origin and received unequal and different treatment while in Defendant's employ; that is, that he did not enjoy all of the benefits, privileges, terms and conditions of the employment relationship as others because of his race, ancestry, color or national origin race.

Second, that a motivating factor for such discrimination by Lombard Ford was the fact that plaintiff is of Hispanic origin and heritage, and,

Third, that as a direct result of such discrimination, Plaintiff sustained damages.

**REQUEST NO. 11**

**Damages**

The plaintiff also claims damages resulting from the defendants knowingly subjecting the plaintiff to the deprivation of rights and privileges secured to him and protected by the Constitution and laws of the United States, Plaintiff further alleges that the acts of the defendants as alleged were maliciously, and wantonly, and oppressively done; and, by reason thereof, plaintiff asks for an award of punitive and exemplary damages, in addition to the actual or compensatory damages claimed by him.

**REQUEST NO. 12**

If you determine that one or more of the defendants are liable to the Plaintiff for the wrongs alleged in this action, based upon any of the claims raised, you should then consider damages.  The object of an award of damages is to place the injured party, as near as may be possible, in the situation he would have occupied, if the wrong had not been committed.  Within the guidelines of these instructions, the amount to be awarded rests largely in your good discretion. <u>Albemarle Paper Company vs. Moody</u>, 422 U.S. 405 (1975).  You should allow him such amount of money as will reasonably compensate him for the damages resulting from the wrongful conduct of the defendants. Actual damages are designed to provide compensation for such out-of-pocket losses such as medical expenses, loss of wages, earnings, and costs incurred by criminal trial. While mental and emotional distress may be hard to quantify, they are clearly compensable.  They include damages for injuries resulting from stigmatization, invasion of privacy, interference with personal development, anxiety, embarrassment, nervousness, humiliation, and injury to reputation and dignity.

**REQUEST NO. 13**

**Punitive Damages**


If you find from a preponderance of the evidence in the case that the plaintiff is entitled to a verdict for actual or compensatory damages; and should further find that the act or omission of one or both defendants, which directly caused actual injury or damage to the plaintiff, was maliciously, or wantonly, or oppressively done; you may also decide whether the plaintiff is entitled to the award of any punitive damages.  An act or a failure to act is maliciously done, if prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member.  An act or a failure to act is wantonly done, if done in reckless or callous disregard, or indifference to, the rights or one or more persons, including the injured person.  In a case like this one, you may consider whether acts or omissions of a defendant, if you find them to have been proved, were so serious that the defendant should pay a penalty so that in the future others will be deterred from engaging in the same conduct.  Whether you decide to award any punitive damages should be based on whether you find that the defendant engaged in any one of the following things:

     a.     Willful or malicious violations of the plaintiff's rights;


     b.     An intentional act by the defendant in gross disregard of the plaintiff's rights;


     c.     Reckless disregard by the defendant of whether or not he was violating the plaintiff's rights.


If you find any of these things to have been proven, then you should award punitive damages.  Smith v. Wade, 461 U.S. 30 (1983); Stolberg v. Board of Trustees, 474 F.2d 489 (2d. Cir. 1973); McFadden v. Sanchez, 710 F.2d 907 (2d Cir. 1983).

**REQUEST NO. 14**

DAMAGES—PROOF

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

loss of income;

loss of economic opportunity;

emotional distress and mental anguish

The loss of enjoyment of life] experienced and which with reasonable probability will be experienced in the future;

The mental and emotional pain and suffering experienced by plaintiff and which with reasonable probability will be experienced in the future;

The reasonable value of [employment and business opportunities] lost to the present time and those which with reasonable probability will be lost in the future;

The plaintiff has the burden of proving damages by a preponderance of the evidence, and it is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

## REQUEST NO. 15

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter a defendant and others from committing similar acts in the future.

The plaintiff has the burden of proving that punitive damages should be awarded, and the amount, by a preponderance of the evidence. You may award punitive damages only if you find that defendant's conduct was malicious, or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights , or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering punitive damages, you may consider the degree of reprehensibility of the defendant's conduct and the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.

You may impose punitive damages against one or more of the defendants and not others, and may award different amounts against different defendants. Punitive damages may be awarded even if you award plaintiff only nominal, and not compensatory, damages.

**REQUEST NO. 16**

**NOMINAL DAMAGES**

The law which applies to this case authorizes an award of nominal damages. If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

**REQUEST NO. 17**

You are instructed that, for purposes of the state and federal anti-discrimination laws, Plaintiff Ernesto Galarza is a member of a protected class.  As a person of Hispanic ancestry, he is protected against race, ancestry, color and national origin discrimination, which includes protection against a hostile work environment.

## REQUESTS FOR FORM OF VERDICT AND JURY INTERROGATORIES

**JURY INTERROGATORIES**

The plaintiff respectfully requests the Court to submit the following interrogatories to the jury:

We, the jury, being duly empanelled and sworn upon our oath unanimously make the following Answers to Special Interrogatories:

1.    Did Ernesto Galarza prove by a preponderance of the evidence that defendants intentionally engaged in conduct at work which discriminated against My Nguyen  because of his race, ancestry, color or national origin.

Answer: _____
                    Yes or No

2.    Was the plaintiff denied the benefits of equal treatment in the workplace because of his race, ancestry, color or national origin policies?
Answer: _____
                    Yes or No

3.    Do you find that the plaintiff has proved, by a preponderance of the evidence, that he was subjected to a hostile or abusive work environment on account of his race, ancestry, color or national origin?

Answer: _____
                    Yes or No

7.    Do you find that plaintiff has proved by a preponderance of the evidence, that defendants engaged in extreme and outrageous conduct directed at him which was beyond all possible bounds of decency?

Answer: _____

Yes or No

**VERDICT**

We, the jury, being duly empanelled and sworn upon our oath, find in favor of the plaintiff Ernesto Galarza, and against the following named defendant or defendants:

Lombard Ford                    _____

                                Yes or No


Richard Lombard                 _____

                                Yes or No


and assess damages in the sum of $_____.


In addition, we further find in favor of the plaintiff Ernesto Galarza upon his claim for punitive damages, and assess punitive damages in the sum of:


$_____ against Lombard Ford


$_____ against Richard Lombard


_____                              _____

Date                                    Foreman