## II.    **STRAY REMARKS**

In the present case, the plaintiff has testified that Mr. Lombard made racially derogatory comments during the course of his employment.  These allegations have been denied.  You must first decide whether any of these alleged statements was ever made.

In the event that you determine that Mr. Lombard made any racially derogatory statements, such statements are not necessarily evidence of discrimination.  For a comment in the workplace to be sufficient evidence for discrimination, it must be (1) related to the protected class of persons of which the plaintiff is a member, in this case the class of persons of Hispanic race and ethnicity; (2) the racially derogatory statements must have been made contemporaneous to the termination; (3) the racially derogatory statements must have been made by and individual with authority over the decision to terminate the plaintiff; and (4) the racially derogatory statements must have been causally related to the decision to terminate the plaintiff.[8]

If the remarks that you heard through testimony do not meet these four requirements, they are not sufficient evidence of discrimination and cannot independently support a finding that the plaintiff was terminated because of his race or ethnicity.

---

[8] Krystek v. Univ. of S. Miss,, 164 F.3d 251, 256 (5th Cir. 1999); see also Townsend v. Clairol, Inc., 26 Fed.Appx. 75, 78 (2d Cir. 2002), Geier v. Medtronic, Inc., 99 F.3d 238, 242 (7th Cir. 1996); Rush v. McDonald's Corp., 966 F.2d 1104, 1116 (7th Cir. 1992); de la Concha v. Fordham Univ., 5 F.Supp. 2d 188, 194 (S.D.N.Y. 1998)

## III.    SAME ACTOR INFERENCE

In considering whether discrimination based on race or ancestry played was the cause of the plaintiff's termination, you should also consider what is called the "same actor inference." In cases where the hiring and firing decision maker is the same person, a "same actor inference" applies.[9] The premise underlying this inference is that if the person who fires an employee is the same person that hired him, one cannot logically impute to that person an invidious intent to discriminate against that employee.[10] In other words, you can infer that because Mr. Lombard hired the plaintiff, he would not then terminate him because of his race or ancestry. This is particularly the case where, as here, the individual accused of discrimination aggressively pursued hiring the plaintiff.[11]

In this case, it is undisputed that Mr. Lombard was the individual responsible for the hiring and termination of the Plaintiff within a one year period. Therefore, you may consider this fact in your determination as to whether the plaintiff was subject to discrimination based on race or ancestry concerning his termination.

---

[9] Carlton v. Mystic Transp., Inc., 202 F.3d 129, 132, 137-38 (2d Cir. 2000)

[10] Carlton, 202 F.3d at 132; Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997).

[11] Townsend v. Clairol, 2001 WL 173764 (D.Conn. 2001), affirmed 26 Fed.Appx. 75 (2002).

## IV.    AFTER-ACQUIRED EVIDENCE IN SUPPORT OF TERMINATION

In this case, the defendants also contend that, while the plaintiff was an at will employee who could be terminated for any reason or no reason at all, they discovered information after the plaintiff's termination which provides cause for his termination.

The role of after-acquired evidence is relevant to the relief or damages awarded to a successful plaintiff in employment cases.

(1) *after-acquired evidence of the employee's wrongdoing* must be taken into account in determining the specific remedy, lest the employer's legitimate concerns be ignored. (2) As a general rule, neither reinstatement nor front pay is an appropriate remedy. It would be both *inequitable and pointless* to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds. The proper measure of back pay presents a more difficult problem. Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, it cannot be required to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if it might have gone undiscovered absent the suit. The beginning point in formulating a remedy should therefore be *calculation of back pay from the date of the unlawful discharge to the date the new information was discovered.*

(3) Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such *severity* that the employee in fact

- 19 –

would have been terminated on those grounds alone had the employer known of it at the time of the discharge.[12]

Therefore, if you find that the plaintiff was terminated because of his race or ancestry, but find that the evidence discovered by the defendant's concerning the plaintiff's unauthorized use of a computer justified his termination, the only damages which he would be entitled to are lost wages from the date of his termination to the date in which the defendant's discovered his unauthorized use of the computer.

---

[12] <u>McKennon v. Nashville Banner Publishing Co.</u>, 513 U.S. 352, 360-62 (1995)

## V.    **BREACH OF CONTRACT**

The plaintiff has also claimed that the defendants have breached a contract for employment in this case. Specifically, the plaintiff claims that the defendants did not pay a bonus that he claims he was entitled to under an alleged employment contract; that the plaintiff was promised employment for life; and that he was promised an equity interest in the dealership. The defendants deny that any express employment contract ever existed and contend that the plaintiff was an employee at will. The defendants further deny that the plaintiff was promised a bonus, employment for life or an equity interest in the company.

The traditional rule in Connecticut governing employment at will contracts of permanent employment or employment for an indefinite term, is that such contracts are terminable at the will of either party without regard to cause.[13]

All employer-employee relationships not governed by express contracts involve some type of implied contract of employment. There cannot be any serious dispute that there is a bargain of some kind; otherwise, the employee would not be working. [14]

Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job

---

[13] Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 117-18 (1988); Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 562-63 (1984); Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474 (1980).

[14] Gaudio v. Griffin Health Services Corp., 249 Conn. 523, 532, 733 A.2d 197 (1999).

responsibilities and the like. Thus, as a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will.[15]  Under Connecticut law, an employee who is terminable at will, may be terminated at any time with or without cause.

In order to sustain a cause of action for breach of an implied contract of employment, the plaintiff has the burden of proving by a fair preponderance of the evidence that the employer agreed, either by words or action or conduct, to undertake some form of actual contractual commitment to him under which he could not be terminated without just cause.[16]

The plaintiff must also prove the existence of a contract by proving the required elements of a contract.  The plaintiff must prove an offer, acceptance and consideration.[17]  Consideration is a benefit to the party promising or a loss or detriment to the party to whom the promise is made.[18]

These elements can be inferred from the acts and conduct of the parties.   The test is whether the conduct and acts of the parties show an agreement.[19]

Another indispensable element of a contract is a "meeting of the minds" upon the subject of the contract.  A meeting of the minds is defined as mutual agreement and

---

[15] <u>Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 234 Conn. 1, 14 (1995).
[16] <u>Id</u> at 15.

[17] <u>Reynolds v. Owen</u>, 34 Conn.Supp. 107, 110, 380 A.2d 543 (1977).
[18] <u>Finlay v. Swirsky</u>, 103 Conn. 624, 631 (1925).

assent of two parties to contract to specific substance and terms. It is an agreement

reached by the parties to a contract and expressed therein, or as the equivalent of

mutual assent or mutual obligation. This definition refers to fundamental understandings

between the parties as to what are the essential elements or subjects of the contract. It

refers to the terms of the contract, not to the power of one party to execute a contract as

the agent of another. [20]

In general, to form a valid and binding contract in Connecticut, there must be a

mutual understanding of the terms that are definite and certain between the parties. To

constitute an offer and acceptance sufficient to create an enforceable contract, each

must be found to have been based on an identical understanding by the parties.[21] If the

minds of the parties have not truly met, no enforceable contract exists. An agreement

must be definite and certain as to its terms and requirements. So long as any essential

matters are left open for further consideration, the contract is not complete. A contract

requires a clear and definite promise.[22] In order to support contractual liability, the

defendants' representations must be sufficiently definite to manifest a present intention

on the part of the defendants to undertake immediate contractual obligation to the

[19] Brighenti v. New Britain Shirt Corporation. 167 Conn. 403, 406, 356 A.2d 181 (1974).
[20] Sicaras v. City of Hartford, 44 Conn. App. 771, 784 (1997).
[21] Senco, Inc. v. Fox-Rich Textiles, Inc., 75 Conn App. 442, 445, 816 A.2d 654, cert. denied, 263 Conn. 916, 821 A.2d 770 (2003).
[22] Geary v. Wentworth Laboratories, 60 Conn App. 622, 627, 760 A.2d 969 (2000).

plaintiff.[23]  An agreement to agree to a material term at a later time is no agreement at all and is unenforceable. [24]

In this case, as a threshold question, you must first determine whether the plaintiff has proven that there was an express contract of employment rather than an implied contract for employment at will, which merely included terms concerning wages, working hours and job responsibilities.

Second, if you determine that there was an express contract for employment, you must determine if there was an express agreement that the plaintiff could only be terminated for cause.

Third, if you have determined that there was an express agreement that the plaintiff could only be terminated for cause, you must determine if the plaintiff has proven that he was terminated without cause.

Fourth, if you have determined that there was an express contract for employment, you must also determine whether the plaintiff has proven that there was a specific contractual agreement concerning a bonus or a specific agreement concerning an equity interest in the dealership.

Fifth, if you have determined that there was an express contractual agreement concerning the specific terms and conditions of a bonus, you must determine whether

[23] *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 214-215, 520 A.2d 217, 218 (1987).
[24] *Drayton v. Petteway,* Superior Court, judicial district of Waterbury, Docket No. CV 99 0152308 (May 5, 2003, Dubay, J.).

the plaintiff has proven that he fulfilled these terms and that the defendant breached these terms.

Sixth, if you have determined that there was an express contractual agreement concerning the specific terms and conditions of an equity interest in the dealership, you must determine whether the plaintiff has proven that he fulfilled these terms and that the defendant breached these terms.

If the plaintiff cannot prove all of these elements by a preponderance of the evidence, you must find in favor of the defendant.

## VI.    STATUTE OF FRAUDS

While the defendants deny that there were any contracts or agreements concerning an equity ownership in the dealership, the defendants also assert the affirmative defense of the Statute of Frauds. Under the Statute of Frauds, no civil action may be maintained upon any agreement that is not to be performed within one year from the making thereof ... unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged. [25] In other words, if the terms of an agreement are not to be performed within a year of the making of the agreement, the agreement or contract must be in writing in order to be enforceable. In this case, there are no written agreements or contracts concerning the transfer or buy in of an equity interest in the defendant dealership.

If you determine that there was no contract concerning an equity interest in the dealership, you must render a verdict in favor of the defendants on this claim and do not have to consider this affirmative defense. However, if you find that there was an oral contract concerning an equity interest in the dealership, you must then determine if the terms of that contract were to have been completed in a period of one year from the date of the oral contract. If you find that the terms were not to have been completed within a year, you must render a verdict in favor of the defendants on this claim.

---

[25] General Statutes § 52-550

## VII.   PUNITIVE DAMAGES

In this case, should you find that the defendant, Lombard Ford, discriminated against the plaintiff by firing him based on his race or ancestry, you may also award punitive damages should you feel that this case warrants such an award.  The awarding of punitive damages is not mandatory and is left to your discretion based on the guidelines I will provide you.

The purpose of punitive damages is to punish Lombard Ford and deter them from similar conduct in the future.  Punitive damages are available when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.[26]

Although there is no mathematical formula to compute punitive damages, such an award must bear a reasonable relationship to the plaintiff's injury and any malicious intent by Lombard Ford.  Because neither compensation nor enrichment is a valid purpose of punitive damages, an award should not be so large as to constitute a windfall to the plaintiff.[27] Punitive damages should not be greater than any amount necessary to punish a defendant and deter such conduct from occurring again.[28]  An

---

[26]   Lee v. Edwards, 101 F.3d 805, 808 (2d Cir. 1996)
[27]   Lewis v. Cowen, 979 F.Supp. 99 (D. Conn. 1997)
[28]   Aldrich v. Thomson, 756 Fed. 2d. 243, 249 (2nd Cir. 1985)

award should not be so high as to result in financial ruin of the defendant . . . nor should

it constitute a disproportionately large percentage of a defendant's net worth".[29]

---

[29]     <u>Vasbinder v. Scott</u>, 976 F.2d 118, 121 (2d Cir. 1992)

## VIII.   CREDIBILITY OF WITNESSES

The jury determines the credibility of witnesses and the weight to be given to their testimony. No fact is determined merely by the number of witnesses testifying for or against. It is quality, not quantity, of testimony that controls.

The credibility of a witness may be impaired or completely destroyed by impeaching testimony, such as illegal or criminal conduct on the part of the witness. It may have been impeached by cross-examination; it may be affected by the appearance of the witness upon the stand; by his or her interest in the outcome; or by evident ignorance to facts to which he or she testifies. You may consider these matters in weighing the testimony in this case.

In passing on the credibility of each of the witnesses, there are certain considerations you may well have in mind:

> Ask whether the story a witness
> has told is plausible. Does it ring
> true? Or are there
> inconsistencies in it? How does it
> fit in with other evidence in the
> case that you believe and other
> facts you find to have existed?
> Does it mesh with that evidence
> and those facts?

You may well ask yourselves in passing on the credibility of any witness whether that witness has any bias or prejudice with regard to any party to the action and, if so, whether he or she has permitted that bias or prejudice to color their testimony. A jury

should always bear in mind that if a witness has a decided bias or prejudice, or has interest in the outcome of the case, that there lurks the temptation to sway or shade one's testimony. In assessing witnesses' testimony, you may properly apply your own knowledge of human nature and of the motives that influence and control human action. You have the right to bring to bear upon testimony in court the same tests of veracity that would be used in the every day affairs of life. You are at liberty within your own sound judgment to choose what testimony you will believe and to discard in whole or in part the testimony of any others.

It is your duty as jurors to harmonize the evidence as far as it reasonably can be done. You are to test the evidence of the several witnesses by your own knowledge of human nature and of the motives which influence and control human nature, using the same good judgment which you apply to facts which are daily presented to you for your consideration and decision.

> Wright and Ankerman, Connecticut Jury
> Instructions, Volumes I and II, §§ 318,
>      640,641, 645 (4th ed. 2000);
> Connelly v. Connecticut Co., 107 Conn. 236
> (1928).

## IX.    MITIGATION OF DAMAGES

One who has been injured by another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries. This is known as the duty to mitigate one's damages. This rule is one of good faith and reasonable conduct, and the requirement is met when the plaintiff does what a reasonable prudent person would be expected to do under the same circumstances to prevent the aggravation of injuries already received and to effect a recovery from such injuries.

The test of good faith and reasonable conduct must be applied under all the conditions surrounding the plaintiff at the time.

If you find that the plaintiff in this action acted in good faith, resorted to such means and adopted such methods as were reasonably within his reach in order to make his damages as small as possible, then you won't have to consider the question of whether the damages should be diminished.

If, on the other hand, you find that he fell short of that test, that he did not act in good faith, and did not resort to such means and adopt such methods as were reason-ably within his reach to make his damage as small as possible, then you ought to take off from the damages which otherwise you would award to him such sum as you think fairly measures the amount to which his damage has been increased by reason of his failure in his duty in this respect.

Miller v. Lovett, 879 F.2d 1066, 1070 (2d Cir. 1989)

- 31 –

## X.    **EXPERT WITNESSES**

Now, in weighing and considering the testimony of the so-called experts, in determining to what extent you will attach weight to the opinions which they gave, you are to apply to them the same rules that you apply to any witness, insofar as it relates to the interest, bias, or prejudice, appearance and demeanor upon the witness stand, frankness and candor, and so forth. You are to determine whether these witnesses are possessed of peculiar and exclusive knowledge and experience in a specialized field. The value which, of course, is to be attached to the testimony and the weight to be accorded, will of course depend upon many other things. Upon the actual skill possessed by the so-called expert, by the experience he has had, and by the training he has had. Has his experience and training been long or brief? Has it been practical or theoretical? Has it been under circumstances where reasonably and logically he has acquired a skill peculiar and greater than that of others, or otherwise?

In considering the testimony of these experts further, you should ask yourselves: What opportunity have the experts had to analyze and study the actual accident scene? Has the length of time of their investigation been adequate? Has the opportunity by which they could have gained personal knowledge been sufficient?

Those are matters to which you are to give such consideration as your own good judgment suggests. Finally, as the witnesses testified before you, have they produced

before a rational and reasonable basis in support of the opinion which they venture?  As they testify, does their mode of testifying indicate care, skill, intelligence, and candor, or does it indicate the contrary?  Would they undertake to support their opinion by relating it to some basis in fact, is the basis, which they bring forth in support of that particular opinion, reasonable and logical and, in your minds, a sound basis?

Wright, Conn. Jury Instructions § 325

In resolving any conflict that may exist between the testimony of two different expert witnesses, you should weigh the opinion of one expert against the other.  In doing so, you should consider the relative qualifications, experience and credibility of the expert witness, as well as the reasons for each opinion and the facts on which the opinions are based.

Wright, Conn. Jury Instructions, 2d ed. § 325

## XI.    ATTORNEYS FEES NOT TO BE CONSIDERED BY JURY

In awarding damages in this case, you should not be concerned by any attorney's fees to which the plaintiff's attorney may be entitled to for handling this civil lawsuit.  That is a matter for the Court to consider, and may be awarded over and above any damages awarded by you.  The fees to which the plaintiff's attorney may be entitled for handling this case are not a proper element of damages and should not be a part of your deliberations.

Bodner v. Haeckel, 86 CV 338 (JAC)